UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. |
| | : | |
| | : | VIOLATIONS: 18 U.S.C. § 286, 1341, 2, 981, 28 U.S.C. § 2461 |
| v. | : | (Conspiracy to Defraud the Government With Respect to Claims, Mail Fraud, Causing an Act to Be Done, Forfeiture) |
| | : | |
| DAVID VILLONGCO, | : | |
| | : | |
| Defendant. | : | |

## STATEMENT OF THE OFFENSE

1. From in or about October 2001 until August 2004, DAVID VILLONGCO ("VILLONGCO") was co-owner and General Manager of PBJ Venture International Corporation ("PBJ Ventures"), located in San Mateo, California. During that time, VILLONGCO and a co-conspirator ("CC-1"), through PBJ Ventures, acted as purported "exporters" in approximately $20 million worth of fraudulent loan transactions, falsified documents sent to United States lending banks and the Export-Import Bank of the United States ("Ex-Im Bank"), and misappropriated approximately $16 million in loan proceeds.

2. In or about October 2001, CC-1 met with a co-conspirator living in Manila, Philippines ("CC-2") and agreed that CC-1 and VILLONGCO, through PBJ Ventures, would act as "exporters" in loan transactions brokered by CC-2 between Philippine borrowers and United States lending banks, in which the Ex-Im Bank was guaranteeing the loans. CC-2 agreed to pay PBJ Ventures a fee of 1.5-2.5% of the value of the purported goods to be shipped, depending upon the value of the goods.

3. In or about October 2001, CC-2 and CC-1 instructed VILLONGCO that lending banks would not pay loan proceeds to PBJ Ventures until the banks and the Ex-Im Bank received a Commercial Invoice, Packing List, Bills of Lading, and Ex-Im Bank Supplier's Certificate (collectively "shipping documents") documenting the amount and value of United States goods shipped to the Philippines.

4. From in or about December 2001 until July 2004, VILLONGCO and CC-1 prepared false Commercial Invoices, Packing Lists, and Bills of Lading documenting approximately $20 million worth of inventory that they had purportedly purchased and shipped to the Philippine borrowers.

5. From in or about December 2001 until July 2004, VILLONGCO and CC-1 prepared false Ex-Im Bank Supplier's Certificates certifying that they had purchased and shipped approximately $20 million worth of United States goods to the Philippine borrowers.

6. From in or about December 2001 until July 2004, VILLONGCO and CC-1 sent to Ex-Im Bank, through the lending banks, the Commercial Invoices, Packing Lists, Bills of Lading, and Ex-Im Bank Supplier's Certificates that they prepared, as proof that they had purchased and shipped approximately $20 million worth of United States goods to the Philippine borrowers.

7. On or about July 21, 2004, VILLONGCO and CC-1 caused the delivery of a false Ex-Im Bank Supplier's Certificate to Toronto-Dominion Bank via Federal Express, knowing that the false Ex-Im Bank Supplier's Certificate would be forwarded to the Ex-Im Bank.

8. From in or about December 2001 until August 2004, PBJ Ventures received approximately $16 million in loan proceeds from the lending banks. Rather than using the loan

proceeds to purchase United States goods, VILLONGCO and CC-1 kept approximately $300,000 of the loan proceeds and transferred approximately $15.5 million to foreign bank accounts owned or controlled by CC-2.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all of the facts known to me concerning criminal activity in which I and others engaged. I make this statement knowingly and voluntarily and because I am in fact guilty of the crimes charged.

DATE: DEC. 27, 2006

_____
DAVID VILLONGCO
Defendant

_____
STEVEN GRUEL, ESQ.
Attorney for Defendant