**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | **Criminal No. 07-009 (RWR)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **DAVID VILLONGCO,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION FOR SECTION 5K1.1 DOWNWARD**
**DEPARTURE AND MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and the Fraud Section of the Criminal Division, United States Department of Justice, hereby submit this motion for downward departure pursuant to U.S.S.G. section 5K1.1 and memorandum in aid of sentencing. For the reasons described below, the United States submits that the defendant's substantial assistance to law enforcement in this investigation merits a five level downward departure. As discussed below, the government requests that the Court (1) impose a sentence in accordance with a resulting total offense level of 21 (range of 37-46 months), with the recommendation that the Court impose a sentence at the low-end of that range, (2) impose a two year term of supervised release, and (3) require the defendant to pay restitution to the Export-Import Bank of the United States.

**Factual Background**

Between October 2001 and July 2004, the defendant was co-owner and General Manager of PBJ Venture International Corporation ("PBJ Ventures"), an exporting company located in San Mateo, California. PBJ Ventures purchased United States goods on behalf of clients in the Philippines and shipped those goods overseas. During that same period, the defendant and co-conspirator Jose Tirona (co-owner of PBJ Ventures) acted as purported "exporters" in approximately $20 million worth of fraudulent loan transactions, falsified documents sent to United States banks and to the Export-Import Bank of the United States (the "Ex-Im Bank"), and misappropriated $16 million in loan proceeds.[1]

In the course of the conspiracy, Villongco and Tirona would prepare false commercial invoices, packing lists, bills of lading, and Ex-Im Bank Supplier's Certificates (collectively "shipping documents") documenting the amount and value of United States goods they claimed to ship to the Philippines. Those false documents were sent to the lending banks and the Ex-Im Bank. The Ex-Im Bank is an independent agency of the United States and is also the official export credit agency of the United States. The Ex-Im Bank issues loan guarantees to United States banks on behalf of creditworthy foreign companies for the purpose of purchasing United States goods. Once Ex-Im Bank issued a loan guarantee, if the foreign borrower defaulted on its loan repayments to a

---

[1] Tirona was indicted by a grand jury on November 6, 2007, as part of a fourteen count Indictment charging one count of conspiracy to defraud the United States and to commit offenses against the United States, in violation of 18 U.S.C. § 371, three counts of false statements, in violation of 18 U.S.C. § 1001, three counts of mail fraud, in violation of 18 U.S.C. § 1341, six counts of money laundering, in violation of 18 U.S.C. § 1957, and one count of obstructing a proceeding before a department and agency of the United States, in violation of 18 U.S.C. § 1505. *See United States v. Nelson L. Ti and Jose Tirona*, Cr. 07-0303 (RWR). Tirona remains at large as a fugitive.

United States bank, the Ex-Im Bank paid the amount of the outstanding loan to the United States bank.

After preparing the false shipping documents, Villongco and Tirona would then prepare real shipping documents describing the true value of the United States goods they actually purchased and shipped to the Philippines.  The actual value of United States goods Villongco and Tirona purchased and shipped to the Philippines was significantly below the amount claimed in the false documents sent to the lending banks and the Ex-Im Bank.  Once the lending banks made the loan payments to Villongco and Tirona, which were intended to reimburse them for the United States goods they had purportedly purchased and shipped, Villongco and Tirona kept a portion of the loan proceeds and sent the vast majority of the proceeds to foreign bank accounts,  as directed by Nelson Ti, who is a loan broker based in Manila, Philippines.[2]

As a result of this fraud, defendant Villongco personally realized approximately $150,000 in profits.  Jose Tirona also personally realized approximately $150,000 in profits.

Relying on information provided by Ti, Villongco, and Tirona, the Ex-Im Bank provided lending banks with $16 million worth of loan guarantees, promising that the Ex-Im Bank would reimburse the lending banks for any losses incurred in the fraudulent loan transactions.  As a result of defaults affiliated with the fraudulent Ti, Villongco, and Tirona loan transactions, the Ex-Im Bank has paid approximately $12.2 million in claims to the lending banks.

When confronted by law enforcement agents about his role in this scheme, the defendant accepted responsibility for his actions and entered a pre-indictment plea to conspiracy to defraud the

---

[2]         Ti was indicted on the same counts as Tirona.  *See* n.1, *supra.*  Ti remains at large as a fugitive.

United States and bank fraud. During the plea colloquy on March 16, 2007, the defendant admitted that between October 2001 and July 2004, he knowingly conspired with Ti and Tirona to defraud the Ex-Im Bank and that he used a commercial interstate carrier in furtherance of that fraud.

Pursuant to a plea agreement, the government and the defendant stipulated to an adjusted offense level of 24 (51-63 months). In the plea agreement, the government notified the defendant that the government intended to seek a two-level increase in the adjusted offense level for deriving more than $1 million in gross receipts from one or more financial institutions. *See* U.S.S.G. § 2B1.1(b)(13). Thus, pursuant to the plea agreement, the defendant faced a maximum total offense level of 26 (63-78 months).

## ARGUMENT

The government moves for a five level downward departure under USSG section 5K1.1. Defendant Villongco provided substantial assistance to the government during its investigation and prosecution of his coconspirators Nelson Ti and Jose Tirona, including the following:

(1)     Villongco agreed to cooperate at an early stage of the investigation and provided critical information to investigators about the "inner workings" of the scheme to defraud the Ex-Im Bank, which assisted the government in investigating and prosecuting Ti and Tirona;

(2)     Villongco contacted friends and relatives in the Philippines in an attempt to assist the government in locating Ti and Tirona (Ti lives in the Philippines and Tirona fled the United States to the Philippines during the investigation); and

(3)     Villongco provided sworn testimony about his role in the fraud, as well as the roles of Ti and Tirona, and assisted the government in obtaining an indictment against Ti and Tirona.

When weighing what sentence is reasonable and appropriate in defendant Villongco's case, several factors merit consideration. First, Nelson Ti – not David Villongco – was the mastermind

of this scheme.  Ti identified borrowers in the Philippines, matched the borrowers up with lenders in the United States, and facilitated the Ex-Im Bank guarantees.  Ti is also the person responsible for recruiting Villongco and Tirona into the scheme and explaining how Villongco and Tirona should make it appear that they were shipping goods that they were not actually shipping.

Second, once the fraudulent loan transactions were completed, Ti realized the vast majority of the fraudulent proceeds.  During the life of the almost three year conspiracy, Villongco personally made approximately $150,000 in profits.  Ti realized approximately $15 million in profits.

Third, Villongco's cooperation was integral to the indictment of co-defendants Ti and Tirona, who are living outside of the United States.  In international investigations, it is often time consuming and difficult to build a case against defendants living overseas, due to difficulties in obtaining documents and testimony from individuals and entities outside of the country.  Villongco's willingness to confess to the crime when confronted by law enforcement, explain conversations he had with Ti and Tirona in furtherance of the fraud, and explain his understanding about the Philippine side of the fraud allowed the government to investigate and charge the case quickly and efficiently.

None of this is to minimize the severity of defendant Villongco's conduct in this case, but rather to keep his conduct and cooperation in the proper perspective.  Villongco is currently at an offense level 26 (63-78 months).  Because he has no prior criminal convictions, a five level downward departure would bring Villongco's offense level to 21, which provides for a Guidelines range of 37-46 months in prison.[3]

---

[3]    A defendant in a separate scheme to defraud the Ex-Im Bank, Robert Delgado, was sentenced to 24 months incarceration by this Court on October 5, 2007.  *See United States v.* (continued...)

## SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Mr. Villongco. These factors are discussed below numbered as they are in Section 3553(a).

(1)    **The nature and circumstances of the offense and the history and characteristics of the defendant.**

(A)    **Nature of the offense**

The maximum statutory terms of imprisonment at issue here reflect the serious nature of the crimes committed by the defendant. Conspiracy to defraud the government with respect to claims carries a maximum statutory term of 10 years imprisonment and is a Class C felony. *See* 18 U.S.C. §§ 286, 3559. Mail fraud carries a maximum statutory term of 30 years imprisonment and is a Class B felony. *See* 18 U.S.C. §§ 1341, 3559.

(B)    **The circumstances of the offense**

The fraudulent conduct engaged in by Mr. Villongco as the co-owner and General Manager of PBJ Ventures was persistent, pervasive and hugely profitable. Villongco's fraudulent conduct spanned a period of almost three years. During those nearly three years, the entire purpose of PBJ Ventures appears to have been designed to defraud the United States lending banks and the Ex-im Bank (and, by extension, American taxpayers) out of at least $16 million through the phony shipping shipments. And the only persons to benefit from the fraud were Villongco and his fellow co-conspirators.

---

[3](...continued)
*Robert Delgado*, Cr. 06-0313 (RWR). Delgado, who had not provided substantial assistance to the government at the time of his sentencing, was part of a $2.1 million scheme to defraud the Ex-Im Bank and personally received $100,000 of the scheme's proceeds.

This case illustrates how a government program intended to benefit United States businesses, by increasing United States exports to companies overseas, can be exploited by United States citizens looking to make easy (and undeserved) money.  In administering its insurance and guarantee programs, the Ex-Im Bank relies on United States-based exporters to provide truthful information about the legitimacy of the transactions in which they engage.  Because the Ex-Im Bank provides insurance products and guarantees to borrowers in foreign countries, and often borrowers in developing nations, it relies on United States exporters to certify that loan proceeds will be used to reimburse the exporters for United States goods that were actually purchased and shipped to the borrowers.  Without this certification, which is contained in the Ex-Im Bank Supplier's Certificate, that transaction cannot be completed.

Villongco abused this trust by intentionally making false statements on Ex-Im Bank Supplier's Certificates and on related documents that he prepared for the sole purpose of misappropriating the loan proceeds.  Instead of purchasing approximately $20 million worth of United States goods and shipping them to borrowers in the Philippines, as he had represented that he had and would, Villongco pocketed $150,000 and transferred approximately $16 million to bank accounts owned or controlled by a co-conspirator in the Philippines.  Villongco's fellow citizens – the American taxpayers – have been left to pick up the tab of his extensive fraudulent conduct.

### (C) The history and characteristics of the defendant

Mr. Villongco was born and educated in the Philippines and later emigrated to the United States, where he obtained gainful employment.  Villongco appears to have maintained a legitimate job at VISA while simultaneously engaging in the fraudulent scheme that formed the basis for these charges.  By all accounts, particularly the letters submitted to the Court on his behalf, Villongco led

a model life as a respected son, sibling, husband, father and citizen at the same time that he was engaging in a massive fraud scheme.  After committing the instant offenses, however, the defendant accepted full responsibility for his conduct and has provided substantial assistance to the government in its investigation and prosecution of others involved in the schemes.   In the government's view, Mr. Villongco has expressed and demonstrated genuine remorse for his fraudulent conduct.   Moreover, his recent actions in substantially assisting the government's investigation bespeak a commitment to personal redemption.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

 As the world's commercial activity becomes increasingly inter-connected and sophisticated fraud schemes targeting the United States extend beyond the borders of the United States, it is important for the Court to impose sentences on the United States-based conspirators, without whom the fraud could not occur, that will adequately deter future crimes.  Although Mr. Villongco does not appear to have orchestrated this crime, he was a willing participant over a number of years and in a number of fraudulent transactions.  As the U.S. based "exporter," he was also an essential figure in its execution.  Without him, the crime could not have succeeded.

As the Court is also aware, this is one of several related cases that involve schemes to defraud the Ex-Im Bank.  It appears that the type of scheme the defendant engaged in is becoming all too common.  As with all newly budding crimes, it is important for the Court to illustrate that these new crimes will not be tolerated and that the perpetrators of such crimes will be severely punished for their actions.

The government recognizes, however, that the significance of Mr. Villongco's crime and the need to deter future crime should be counterbalanced with the defendant's predominately good conduct as a productive member of society, timely acceptance of responsibility when confronted by law enforcement agents, and the fact that he only kept $150,000 in profit from the $16 million crime. Although we do not believe the size of his personal profit mitigates his responsibility for the full $16 million crime, we do believe it is a factor that may be considered along with his prior conduct and timely acceptance of responsibility, in fashioning an appropriate sentence within the Guidelines.

As to the final consideration, the defendant does not appear to need further education or vocational training.

**(3)  The kinds of sentences available**

The maximum term of imprisonment for conspiracy to defraud the government with respect to claims is 10 years, with a term of supervised release of not more than 3 years.  The maximum term of imprisonment for mail fraud is 30 years, with a term of supervised release of not more than 5 years.

**(4)  The sentencing range established by the United States Sentencing Guidelines ("USSG")**

As to these guidelines, the government and the defendant stipulated in the plea agreement to an adjusted offense level for the offense of 24.  The government also informed the defendant that it intended to seek an additional two-point enhancement for deriving more than $1,000,000 in gross receipts from one or more financial institutions.  *See* U.S.S.G. § 2B1.1(b)(13).  With a Criminal History category I, which the PSR has recommended, the resulting total offense level is 26.  As stated above, the government recommends a five-level downward departure under U.S.S.G. § 5K1.1

based on the defendant's substantial assistance for an adjusted total offense level of 21. The resulting USSG range recommended by the government is, therefore, 37-46 months.

The Probation Office believes an additional two-point enhancement should apply based on a substantial part of the fraudulent scheme allegedly having been committed outside the United States. *See* PSR at ¶ 26. Although it is a close question, the government disagrees with this additional two-point enhancement in this case. As detailed in the Information and Agreed Statement of Offense, the majority of the fraud in this case occurred in the United States. The fraudulent shipping documents were prepared in the United States, the false representations were made by individuals (Villongco and Tirona) living in the United States, the false representations were communicated to United States lending banks and the Ex-Im Bank of the United States, and the fraudulent proceeds were transferred from the United States lending banks to a bank account maintained by Villongco and Tirona in the United States. The fact that one of the co-conspirators who was directing Villongco and Tirona lived in the Philippines and that most of the fraudulent loan proceeds were eventually transferred to accounts maintained in the Philippines should not rise to the level of a "substantial part" of the fraud occurring outside the United States.

In the plea agreement, the parties stipulated that the applicable fine range for both counts one and two was $1,250,000 or twice the pecuniary gain or loss. The Probation Office calculates the maximum fine for count one as $250,000 or twice the pecuniary loss or gain, which in the instant offense was valued at $28,569,305.56; and for count two as $1,000,000 or twice the pecuniary loss or gain of $28,569,305.56. *See* PSR at 13, ¶ 92. Based on Mr. Villongco's financial condition, the government is not recommending a fine.

-10-

**(5) Any pertinent policy statement issued by the USSC**

The government is unaware of any pertinent policy statements issued by the USSC.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records**

A guidelines sentence would help prevent such disparities between the defendant and similar defendants.

**(7) The need to provide restitution.**

The defendant has already forfeited his proceeds from the fraud ($150,000) to the United States at the time of his plea. The government submits that this Court should find that defendant Villongco is responsible, jointly and severally, with co-conspirators Nelson Ti and Jose Tirona for the entire loss affiliated with the fraudulent loan transactions, which according to the Ex-Im Bank amounts to $14,284,652.78.

**CONCLUSION**

For the foregoing reasons, the government respectfully moves for a five-level downward departure under U.S.S.G. § 5K1.1, with a resulting adjusted offense level of 21 and Guidelines range of 37-46 months. The government recommends concurrent sentences of 37 months' incarceration on each of the two counts, a concurrent two-year period of supervised release on each of the two counts, and restitution in the amount of $14,284,652.78.

-11-

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
In and For the District of Columbia

By:   _____
MICHAEL K. ATKINSON
D.C. Bar # 430517
Assistant United States Attorney
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 616-3702
Michael.Atkinson2@usdoj.gov


STEVEN A. TYRRELL
Chief, Fraud Section
Criminal Division
United States Department of Justice


By:   _____
HANK BOND WALTHER
D.C. Bar # 477218
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
(202) 257-6176


Date:   February 22, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CRIMINAL NO. 07-009 (RWR)** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **DAVID VILLONGCO,** | : | |
| | : | |
| Defendant. | : | |

## ORDER

Upon motion of the United States of America for a downward departure under Section 5K1.1 of the United States Sentencing Guidelines based on substantial assistance provided by the defendant in the investigation and prosecution of other persons, arguments of counsel, and the entire record in this matter, it is hereby

ORDERED that the government's motion for a downward departure under Section 5K1.1 of the United States Sentencing Guidelines is GRANTED; and it is further

ORDERED that the defendant's total offense level shall be adjusted downward by five (5) levels pursuant to Section 5K1.1 of the United States Sentencing Guidelines.

Entered in Washington, D.C., this _____ day of_____, 2008.

_____
RICHARD W. ROBERTS
United States District Judge

cc:     Michael K. Atkinson
        Assistant United States Attorney
        United States Attorney's Office
        555 Fourth Street, N.W., Room 5830
        Washington, D.C.  20530
        Michael.Atkinson2@usdoj.gov

        Hank Bond Walther
        Trial Attorney
        U.S. Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, N.W., 3rd Floor
        Washington, D.C.  20005

        Steven Gruel, Esq.
        655 Montgomery St.
        Suite 1700
        San Francisco, CA 94122