UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 07-009 (RWR) |
| | : | |
| V. | : | HONORABLE ROBERT W. RICHARDS |
| | : | |
| | : | DATE:  2/29/08 |
| DAVID VILLONGCO, | : | TIME:  Noon |
| | : | |
| Defendant. | : | |

### DEFENDANT'S  SENTENCING  MEMORANDUM

Defendant, David Villongco, by and through his attorney, Steven F. Gruel, hereby submits this Memorandum in aid of sentencing.

### I.  INTRODUCTION

Defendant David Villongco appears before the Court for sentencing following his guilty plea to violations of 18 USC Section 286 and 18 USC Section 1341. While both the Statement of the Offense, submitted by the defendant at the time of his plea, and the factual summary contained in the Presentence Report ("PSR") are accurate, they do not fully provide the Court with a complete explanation of the "nature and circumstances of the offense" and the "history and characteristics of the defendant."  18 USC Section 3553(a) (1).   Mr. Villongco respectfully submits this memorandum to address that deficiency and to speak to several other issues.

Further, 18 USC Section 3553 directs that along with considering the nature of the offense and the characteristics of a defendant, certain factors be considered in imposing a sentence sufficient, but not greater than necessary, to achieve enumerated goals. In considering the circumstances of this case, Mr. Villongco's history and characteristics, together with the goals of sentencing, the defense respectfully disagrees with several of the government's sentencing recommendations. Specifically, as explained below, Mr. Villongco respectfully requests that the Court consider the least amount of imprisonment to satisfy the goals of sentencing. An additional year of supervised release (the government recommends 2 years) with the special conditions as described below could assist the Court in that regard. No fine is correctly recommended by the government and any restitution amount should reflect Mr. Villongco's limited involvement in this case and ability to pay.

## II.   FACTORS TO BE CONSIDERED IN THE IMPOSITION OF SENTENCE

The government has informed the Court that at sentencing it will move for a downward departure pursuant to the United States Sentencing Guidelines Section 5K1.1. The defense concurs and asks that the Court find that Mr. Villongco has provided the government with "substantial cooperation" and grant the motion to depart downward. With the government's 5K1.1 motion in mind, the defendant requests that the Court likewise consider the 18 USC 3553 sentencing factors, facts of the case, restitution statutes and case law outlined below.

### A.  NATURE AND CIRCUMSTANCES OF THE OFFENSE

The underlying facts of this offense are outlined in the PSR, government's sentencing memorandum, and the defendant's Statement of the Offense. Essentially, while working

at his full time job at VISA, Mr. Villongco also worked for a business called PBJ. At PBJ, he signed off on documents that caused the Ex-Im Bank to fraudulently authorize loans in excess of $15,000,000.

In 1990, Jose Tirona (Mrs. Villongco's brother) approached David and asked him to help open PBJ which was to serve as a buying office for Tirona's Philippine's trading company. For 8 years the business operated and sent goods to the Philippines. In January 2000, PBJ was dormant because business had completely ended. However, in 2001, Tirona approached David to start the business again. Mr. Villongco felt a need to assist his brother-in-law in the new PBJ business in that Tirona was in need of a job and was suffering through marital difficulties. It was during this time, at the direction of his brother-in-law, but fully understanding what he was doing, that Mr. Villongco began to assist in the fraud scheme by signing false documents.

When authorities learned of this fraud, both Nelson Ti and Joey Tirona instructed Mr. Villongco to lie to auditors. Tirona and Ti told Mr. Villongco to cover up the fraud and mislead federal investigators. Ashamed by his actions, Mr. Villongco instead immediately admitted his responsibility and began to assist the investigation. Jose Tirona fled the United States and went back to the Philippines. Nelson Ti also remains in the Philippines.

### B. MR. VILLONGCO'S HISTORY AND CHARACTERISTICS

Although very detailed, the PSR provides only a snapshot of David Villongco that cannot capture the full essence of him. On February 13, 2008, letters of support were offered to the Court, prosecution and probation officer which afford an expanded picture of Mr. Villongco.

Together with astonishment that he was involved in this crime, the repeated themes in these letters reveal Mr. Villongco as a respected citizen, loving husband and father and a valuable member to his community and faith. He has given countless hours helping others – people he knows and people he has never met. Over the years, he has traveled with charitable organizations to Mexico to build homes for the poor.

Mrs. Villongco and their two boys, now young men, share with the Court their heartfelt descriptions of a husband, father and man. The Villongcos have been married 22 years. They have a strong, loving marriage. The two children talk of their love and continued respect for their father, notwithstanding his tremendous error in judgment. Always the teacher, Mr. Villongco continually had his boys attend many meetings with him and defense counsel where "lessons" of the consequences of criminal conduct were discussed. Family, members of his Church, friends and former co-workers know and cherish David Villongco as someone beyond the criminal defendant before the Court. Together they ask for the Court's leniency.

Their belief in David Villongco is well founded. He does not have a single criminal blemish on his record. From the first time he was first contacted by law enforcement, Mr. Villongco has completely accepted responsibility for his criminal conduct. He disgorged the entire proceeds he derived from the fraud by paying a full forfeiture of $150,000.00 to the government nearly a year ago. This amount was paid at the time of guilty plea. He has done everything within his power to atone for his mistake.

Mr. Villongco has fully cooperated with the government. The prosecution has outlined for the Court Mr. Villongco's cooperation. As described below, in fashioning a "just sentence," that cooperation and more should be considered by the Court.

### C. THE SENTENCE SHOULD REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW AND PROVIDE JUST PUNISHMENT

Nothing before the Court shows any disrespect by Mr. Villongco to the law. To the contrary, he voluntarily appeared before this Court to admit to the charges, disgorged the proceeds of the fraud he obtained, followed his conditions of pretrial release and, for nearly 2 years fully cooperated with the government.

A "just punishment" should also consider the hardships that Mr. Villognco has already endured. His cooperation with the government in this case is different than cooperation in any other cases. Here, he has inculpated his brother-in-law, Jose Tirona. As a result, a close family has been torn apart. Mrs. Villongco has no further contact with Jose, her brother. The two boys have lost a onetime close relationship with their uncle.

A just punishment should further reflect and include the full extent of Mr. Villongco's cooperation. His cooperation was early and extensive. After deciding to cooperate with the government, he was always available for the prosecutors and investigating agents. Mr. Villongco's substantial cooperation resulted in or included: (1) a 14 Count indictment against Nelson Ti and Jose Tirona; (2) a criminal forfeiture count against Ti and Tirona; (3) truthful testimony before a federal grand jury; (4) taped telephone calls at government direction; (5) providing previously unknown documents, such as e-mails, and other evidence to the government; and (6) participating in numerous meetings or telephone conferences with agents with regard to many aspects of this case that can be shared at sentencing.

True, Mr. Villongco, despite having the wonderful family and friends who have come forward, has brought this all onto himself. He has never suggested otherwise. Rather, the defense submits that the Court consider the great impact *any sentence* will have on the Villongcos. When one considers the *entire* impact that this case has had on David Villongco and family, together with his genuine remorse and unending efforts to rectify his crime, a sentence with a minimum term of imprisonment is truly a just punishment.

### D.     THE SENTENCE SHOULD AFFORD DETERENCE AND PROTECT THE PUBLIC

It is abundantly clear that Mr. Villongco's admission of guilt to his criminal offense has profoundly impacted him and his family's life. This Court can be completely assured and trust that he will never again be involved in any future criminal conduct. Nothing suggests that Mr. Villongco should be considered a threat to the safety of the public. Clearly, the numerous letters of support overwhelmingly establishes him as a valuable community member who, unfortunately, made a critical mistake that has vastly impacted his life.

The PSR and prosecution agree that the defendant does not appear to be a threat to the community. There is nothing that suggests that the probation officer or prosecutor are wrong.

### E.     THE SENTENCE SHOULD AVOID UNWARRANTED SENTENCE DISPARITIES

No other defendants have been arrested in this case. They remain fugitives and likely reside in the Philippines. The irony here is that the least involved is the only one yet to be before the Court.

The government refers to a similar case where a defendant named Robert Delgado, who personally gained $100,000, received a sentence of 24 months. In that case, the Ex-Im Bank was defrauded of approximately $2.1 million dollars. Mr. Delgado did not receive a 5K1.1 departure. The Court, nonetheless, departed downward from an imprisonment range of 37 – 46 months and imposed a sentence of 24 months.

Here, although the total fraud amounts are very different, Mr. Delgado and Mr. Villognco appear to have played similar low level roles as reflected in the smaller amounts they personally received.[1] Consequently, the defense submits that the 18 USC Section 3553 factors and Mr. Villongco's substantial assistance to the government warrants similar lenient treatment. The 24 month sentence imposed on Mr. Delgado should not be used as a disparity measure or "fairness yardstick" to support a maximum term of imprisonment in this case.

### F.   THE KINDS OF SENTENCES AVAILABLE AND THE SENTENCING RANGE

The parties first agreed upon an offense level of 24 and a guideline range of 51- 63 months. At issue remains 4 points of guideline enhancements. First, the defense agrees with the government that the 2 point enhancement under USSG 2B1.1(b)(9)(B) does not apply for the reasons mentioned in the government's memorandum. (*see also* PSR # 26). Next, pursuant to the plea agreement, the defense reserved the right to oppose the government's argument that the other 2 point enhancement for gross receipts more than $1,000,000 under USSG 2B1.1(b)(13)(A) should apply. (*see also* PSR # 27).

It is stipulated by the parties that Mr. Villongco did not personally derive more than

---

[1] Actually, Mr. Villongco received approximately 1 % of the amount stolen from the Ex-Im Bank while Mr. Delgado received approximately 5 % of the amount stolen in that separate scheme.

$1,000,000 in gross receipts from this offense. The government agrees with this conclusion. Mr. Villongco only received $150,000 from this fraud. The March 16, 2007 forfeiture payment to the United States Marshals reflects the entire amount Mr. Villongco received.

The *Commentary* section of the guidelines mentions that the USSG 2B1.1(b)(13)(A) enhancement that it applies when " . . . if the gross receipts to the **defendant individually**, **rather than to all participants**, exceeded $1,000,000." (emphasis added). This particular enhancement would correctly apply to Nelson Ti who received in excess of $15,000,000 from the fraud. Thus, the 2 point enhancement under USSG 2B1.1(b)(13)(A) should not apply against this lower level participant who, everyone agrees, only kept a fraction of the amount defrauded.

In sum, the 2B1.1(b)(13)(A) enhancement should apply where the defendant either controls the fraud proceeds or where he causes them to be lodged in another with the expectation that he will enjoy the benefit. Here, beyond the $150,000, Mr. Vilongco did neither. *see* United States v. Pendergraph, 388 F.3d 109, 113 (4th Cir. 2004) (defendant had controlling interest in company and "thus controlled the fraudulently acquired funds"); United States v. Stolee,172 F.3d 630,631 (8th Cir 1999) (defendant was the sole owner and president of the company). Nelson Ti, not Mr. Villongco, controlled the millions of dollars above and beyond the $150,000 that both Villongco and Tirona received.

Assuming that the Court concurs with the above analysis, the final offense level would be 24 and, with the government's 5 point 5K1.1 reduction, in a final adjusted offense level of 19 points. The sentencing guideline range would be 30 - 37 months.

From that 30 -37 month range, the factors contained in 18 USC Section 3553 warrant consideration in fashioning a sentence with the least amount of prison time.

      G.            **THE NEED TO PROVIDE RESTITUTION**

18 USC Section 3663 requires that restitution be ordered. The Court retains, however, the discretion to fashion a restitution order if it finds that more than 1 defendant contributed to the loss of the victim and apportions liability among the defendants to reflect the level of contribution to the victim's loss. 18 USC Section 3664(h). Plus, the statute directs that the Court should consider the "economic circumstances of each defendant" in apportioning restitution.

Here, the government concurs that Mr. Villongco had a limited role in this fraud. The $150,000 that went to Mr. Villongco is approximately 1 % of the total fraud. Aside from the $150,000 which Jose Tirona kept, the rest of the funds were sent overseas to the mastermind Nelson Ti. It seems vastly unfair, and frankly unnecessarily punitive, when one considers that the lowest participant in this three man scheme, who did not flee the United States, but instead remained to cooperate with the government and immediately paid back the full amount which he kept, should be obligated to make monthly payments for those more responsible.[2]

Moreover, as a result of this case, Mr. Villognco was fired from his job with *VISA*. Upon serving any prison time, he will be in his fifties and looking for work. It will not be easy finding employment at that age, as a convicted felon with his employment skills mainly in the field of computer software.

---

[2] Arguably, Mr. Villongco's $150,000 restitution payment is also his full restitution in this case. His check was payable to the United States Marshals. The Ex-Im Bank is another federal government entity. In other words, arguably the "victim" in the government.

### III.  RECOMMEND SENTENCE AND REQUEST FOR VOLUNTARY SURRENDER AFTER BOP DESIGNATION

Mr. Villongco will personally address the Court at sentencing as to his remorse and shame for this serious offense. The defense will and does respectfully recommend a sentence of the least amount of prison necessary to achieve the goals of imprisonment. There has indeed a great amount of punishment apart from prison time already suffered by Mr. Villongco in this case.  In fashioning a sentence, the Court can consider that it could impose a 3 year term of supervised release with special conditions that include time at a halfway house, home confinement or community service.  The parties agree that there should be no fine.  Restitution should be apportioned to reflect Mr. Villongco's level of contribution to the victim's loss and his economic situation. The Special Assessment of $200 will be paid at time of sentencing.

After the imposition, the defense requests, and the government does not object, that Mr. Villongco remain on pretrial release until he has been designated by the Bureau of Prisons.  Mr. Villongco respectfully requests that the Court recommend to the BOP that he be designated to a federal institution in California.

### IV.  CONCLUSION

Mr. Villongco committed a serious crime.  He accepts full responsibility for his actions.  On February 13, 2008, defense counsel offered numerous letters from people of all walks of life who took time to write to the Court so as to fully describe Mr. Villongco. For nearly 2 years, Mr. Villongco has assisted law enforcement.  He has abided by all conditions of his release.  He has suffered through the loss of his loss of his job. Yet, through it all he has maintained his 22 year old marriage and family togetherness (it may have been even strengthened as this family went through this together).

Cleary, Mr. Villongco is blessed with a loving family and wonderful friends. Mr. Villongco's crime has resulted in deep shame and personal embarrassment to those he loves and cares for. Incarceration beyond that which the factors of 18 USC 3553 deems necessary fails to achieve anything in this case but to add more punishment, where none is needed, and unnecessarily delays the continuing significant contributions Mr. Villongco provides to his family and the community.

                                        Respectfully Submitted,


Dated: February 25, 2008          __/s/_____
                                  STEVEN F. GRUEL
                                  Law Offices of Steven F. Gruel
                                  Attorney for David Villongco
                                  *Pro Hac Vice*
                                  California State Bar # 213148
                                  655 Montgomery Street, Suite 1700
                                  San Francisco, California 94111
                                  (415) 989-1253