# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DAVID VILLONGCO,

Defendant.

Criminal Case No. 07-009 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

The defendant David Villongco, who is proceeding *pro se*, contests the government's effort to garnish funds in his retirement and brokerage accounts in partial satisfaction of the defendant's restitution obligation in the amount of $14,284,852.78. Def.'s Mot. to Quash the Writ of Continuing Non-Wage Garnishment, ECF No. 46 ("Def.'s Mot.").[1] This restitution obligation was ordered as part of a criminal judgment entered against the defendant over eight years ago, with directions that the restitution be paid in monthly installments, with which payment schedule the defendant has fully complied. *Id.* at 1. Nevertheless, the government now seeks to garnish from the garnishee, Fidelity Investments, four of the defendant's accounts containing approximately $806,536.52, as "non-exempt disposable earnings in which the Defendant has a substantial non-exempt interest." Appl. for Writ of Continuing Non-Wage Garnishment ("Gov't's Appl. for Writ"), at 1, ECF No. 40; Answer of Garnishee ("Answer"), ¶¶

---

[1] After this case was reassigned, on March 24, 2016, to the undersigned Chief Judge, the defendant submitted a letter, dated April 19, 2016, which the Court construed as a motion to quash the government's garnishment writ. *See* Min. Order (May 5, 2016). In response to the Court's Order, the defendant's former counsel confirmed, on May 6 and 7, 2016, that they no longer represent the defendant. *See* Notice of Nonrepresentation as to David Villongco by Thomas Simeone, ECF No. 47; Notice of Nonrepresentation as to David Villongco by Steven Gruel, ECF No. 48.

7, 9, ECF No. 42; Supplemental Answer of the Garnishee ("Suppl. Answer"), at 2, ECF No. 43. For the reasons discussed below, the defendant's motion to quash is granted.

## I.  BACKGROUND

Summarized below is the relevant factual and procedural background of this case.  The Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("USPO") in connection with the defendant's sentencing described the defendant's "Financial Condition: Ability to Pay" and disclosed that the defendant held, *inter alia*, the following assets: (1) "a 401K retirement savings account with Fidelity Investments" that "was established from his former employment with Visa" and, as of January 28, 2008, had a balance of $376,003.14, *see* PSR ¶¶ 64, 64a, ECF No. 51; (2) "another 401K with General Electric (GE), from his former employment with this company," which, "[a]s of December 2007, he believes . . . had a total asset value of $120,000," *id.* ¶ 64; and (3) "[a]s of December 2007," GE and Prudential stock with a value of $6,134.00, *id.* ¶ 65.[2]  After noting that the defendant must be ordered to pay "full restitution to the victim without consideration of the economic circumstances of the defendant," *id.* ¶ 96 (citing 18 U.S.C. §§ 3663A(a)(1), (3)), the PSR advised that "[t]he Court may order the defendant to make nominal periodic payments if the Court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of [] restitution, . . . in the foreseeable future under any reasonable schedule of payments," *id.* (quoting 18 U.S.C. § 3664(f)(3)(B)).

---

[2]      To facilitate consideration of the defendant's motion to quash, the Court directed the USPO to file, under seal, the PSR and the USPO's Sentencing Recommendation, which were docketed on June 8 and 30, 2016, at ECF Nos. 51 and 53, respectively.  Prior to his sentencing, the defendant acknowledged, on February 29, 2008, receipt of the PSR.  Def.'s Receipt and Acknowledgement of PSR, ECF No. 35.  In order for the Court's reasoning to be fully discussed here, portions of the PSR and Sentencing Recommendation quoted herein are unsealed, while the full documents remain sealed.  *See United States v. Reeves*, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009) (unsealing the PSR "to the limited extent referenced in [the] opinion," but maintaining that "the full document shall remain physically withheld from public review") (citing *United States v. Parnell*, 524 F.3d 166, 167 n.1 (2d Cir. 2008) (per curiam)).

At the sentencing hearing, in addition to concurrent terms of imprisonment and supervised release on each of two counts of conviction, the defendant was ordered to "pay restitution totaling $14,284,652.78 jointly and severally with [his] accomplices, with credit to [him] for amounts already paid." Tr. of Sentencing Hr'g at 28:8–11, (Feb. 29, 2008), ECF No. 52.[3] The Court also issued instructions regarding the timing and manner of the restitution payments, ordering, first, that "[t]he special assessment and restitution are immediately payable to the clerk of this court," and, second, that as a special condition of supervised release, the defendant "must pay the balance of any restitution owed at a rate of no less than $500 each month and provide verification of that payment to the probation office." *Id.* at 28:16–17, 29:12–14.[4]

Apparently confused by the seemingly contrary directions about when restitution payments became due—either "immediately" or in installments while on supervised release—, defense counsel raised the question of when payments on the restitution obligation would begin, asking, "does that begin upon release from custody and is a condition of his supervised release or does that begin now?" *Id.* at 31:16–17. The Court responded: "No, the order I just entered required the beginning -- required the payment due immediately. You will certainly probably

---

[3] The PSR indicates that other individuals were involved and indicted in connection with the criminal conduct underlying the defendant's convictions. *See* PSR ¶ 18. The D.C. Circuit recognizes that joint and several liability for restitution obligations may be appropriate, at least "where there is more than one defendant and each has contributed to the victim's injury." *United States v. Monzel*, 641 F.3d 528, 538 (D.C. Cir. 2011); *see also United States v. Cano-Flores*, 796 F.3d 83, 95 (D.C. Cir. 2015) (holding that "joint and several liability" does not extend to criminal forfeiture but "might well apply to restitution in a criminal case," under 18 U.S.C. § 3664(h), "as a means of protecting victims"); *cf.* 13 Administrative Office of the United States Courts, Guide to Judiciary Policy, Finance and Budget, Chapter 8, § 820.20.20 (Setting up Joint and Several Restitution Accounts) ("Joint and several restitution should not be ordered against individuals who are not before the court or included in the same indictment.").

[4] The USPO's Sentencing Recommendation, in an attached document titled "Sentencing Format," recommended a monthly restitution payment that was double the monthly amount imposed by the Court. *See* Sentencing Recommendation at 25, ECF No. 53. The "Sentencing Format" also reflected the language employed by the Court, recommending that "[t]he special assessment and restitution are immediately payable to the Clerk of the Court for the U.S. District Court, District of Columbia" and that the "Restitution Obligation" payment schedule be imposed as one of the "special conditions" of supervision. *Id.*

need to work through with others how and -- how much to pay, when it starts, but certainly during the period of incarceration, payments will have to come through the Inmate Financial Responsibility Program. It's understandable that there may end up being some limits on how much that can be during that period of time, but the payments for the restitution as well as the special assessments are due and payable immediately." *Id.* at 31:18–32:1. The Court continued, "[t]he fact is that, you know, payment schedules end up getting worked out when people don't have the full amount of all that's due and payable immediately." *Id.* at 32:3–5.

The Judgment and Commitment Order, entered on March 14, 2008, generally reflects the sentence imposed at the earlier hearing: the defendant was sentenced to concurrent terms of thirty-three months of imprisonment and three-year terms of supervised release on each of two counts, to which he pleaded guilty, of conspiracy to defraud the Government and mail fraud, in violation of 18 U.S.C. §§ 286 and 1341, 1342. Judgment and Commitment Order, ("J & C") at 1, ECF No. 33. The order directed the defendant, *inter alia*, to pay "[r]estitution totaling $14,284,652.78 to be paid jointly and severally with your accomplices with credit to the defendant for amount already paid," and to "pay the balance of any restitution owed at a rate of no less than $500.00 each month and provide verification of same to the Probation Office." J & C at 5–6.[5] The order further required as "a condition of supervised release that the defendant pay [a fine or restitution] in accordance with the Schedule of Payments sheet of this judgment," *id*. at 3, and that the defendant "notify the court and United States attorney of material changes in

---

[5]       The order imposed additional financial penalties, including payment of a $200.00 special assessment and "forfeit[ure of] $150,000 as ordered in the March 16, 2007 Consent Order of Forfeiture." J & C at 4; *see* Consent Order of Forfeiture, ECF No. 6. The section of the judgment providing for "Criminal Monetary Penalties," including restitution, states that "[t]he defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6," J & C at 6, and, although "Sheet 6" is not in the record, "Sheet 5A" titled "Additional Terms for Criminal Monetary Penalties" reflects the total amount of restitution and payment schedule orally ordered by the Court at the sentencing hearing.

economic circumstances," *id.* at 1.[6]  Neither party objected to or appealed the sentence.  *See generally* Tr. of Sentencing Hr'g.

Almost eight years later, on March 4, 2016, the government filed an Application for Writ of Continuing Non-Wage Garnishment to Fidelity Investments as to David Villongco, *see* Gov't's Appl. for Writ, to which the garnishee, Fidelity Investments, filed an answer, *see* Answer at 1.  The garnishee explained that the defendant "is a terminated participant in the General Electric Retirement Savings Plan," in which "the [d]efendant has an account balance of $186,456.02 as of March 15, 2016."  Answer ¶¶ 7, 9.  Further, the defendant "is a retired participant in the Visa 401(k) Plan," in which "the [d]efendant has an account balance of $405,264[.]23 as of March 15, 2016."  *Id.*  The garnishee subsequently supplemented this information identifying two additional accounts of the defendant: a UC Individual Brokerage Account in the amount of $2,764.56, and a Rollover Individual Retirement Account of the defendant in the amount of $212,051.71.  Suppl. Answer at 2.

Pending before the Court is the defendant's request that the Court "rescind this collection effort or procedure."  Def.'s Mot. at 1.  The defendant states that he has "been diligently paying [the amount of $500.00 each month] ever since [he] was released."  *Id.*  To demonstrate this compliance, he attached the last three months of restitution payments.  *See* Def.'s Mot., Ex. 1 ("Financial Docs."), ECF No. 46-1.  While not disputing the defendant's full compliance with the restitution payment schedule both during and after his now expired supervised release term, the government opposes this motion.  Gov't's Mem. Opp'n Def.'s Mot. to Quash Writ of Garnishment ("Gov't's Opp'n"), ECF No. 49; *see* Min. Order (May 9, 2016) (setting briefing

---

[6]     The latter notice requirement regarding material economic changes was not stated orally at the sentencing hearing, but a district court may use a written judgment to clarify implementation of a sentencing order.  *See United States v. Knight*, No. 14-3010, 2016 U.S. App. LEXIS 10516, at *12 (D.C. Cir. June 10, 2016).

schedule and directing government to address in its opposition: *United States v. Hughes*, 813 F.3d 1007 (D.C. Cir. 2016); *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015); and *United States v. Ekong*, 518 F.3d 285 (5th Cir. 2007)).

## II.    DISCUSSION

To satisfy part of the remaining $13,975,907.08 owed on the original $14,284,652.78 restitution order against the defendant, Gov't's Appl. For Writ at 1, the government seeks to garnish the defendant's Fidelity Investments retirement and brokerage accounts, worth approximately $806,536.52.  The defendant requests that the garnishment be stopped for the straightforward reason that he is in full compliance with the court-ordered restitution payment schedule.  Def.'s Mot. at 1.  Essentially, the defendant's position is that, absent any delinquency or default in the restitution payments of $500.00 per month, the government is not entitled to accelerate these payments by garnishing funds in the targeted savings accounts.  The government's arguments supporting the garnishment and opposing the motion to quash are analyzed after a review of the statutory framework.

### A.    STATUTORY FRAMEWORK

"Federal courts have authority to order restitution solely pursuant to statute." *United States v. Anderson*, 545 F.3d 1072, 1077 (D.C. Cir. 2008) (citing *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998)); *see also United States v. Gottesman*, 122 F.3d 150, 151 (2d Cir. 1997) ("'Federal courts have no inherent power to order restitution.  Such authority must be conferred by Congress through statute.'" (quoting *United States v. Helmsley*, 941 F.2d 71, 101 (2d Cir. 1991))).  In fact, there is a "'specific and detailed [statutory] scheme addressing the issuance . . . of restitution orders arising out of criminal prosecution.'" *Martinez*, 812 F.3d at 1204 (quoting *United States v. Wyss*, 744 F.3d 1214, 1217 (10th Cir. 2014)).

6

The two principle restitution statutes applicable to defendants convicted of federal crimes are the Victim Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A, 3664. These two statutes share a number of parallel provisions, with the primary distinctions being that the VWPA "provides federal courts with discretionary authority to order restitution to victims of most federal crimes," while the MVRA "requires restitution in certain federal cases involving a subset of the crimes covered by the [VWPA]. (Recall that under the 1982 Act, restitution is discretionary, not mandatory)." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). In addition, unlike the VWPA, the MVRA "requires the court to award full restitution regardless of the defendant's financial circumstances, . . . ; and gives victims a role in the sentencing process." *United States v. Monzel*, 641 F.3d 528, 543 (D.C. Cir. 2011) (citing 18 U.S.C. §§ 3664(d)(2), (f)(1)(A)).[7] Set forth below are the relevant provisions of the MVRA and the enforcement provisions applicable here.

### 1. The Mandatory Victims Restitution Act of 1996

As noted, the MVRA mandates that a defendant convicted of certain enumerated offenses, "including any offense committed by fraud or deceit," be ordered to "make restitution to the victim of the offense . . . ." 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). The defendant's convictions in this case, conspiracy to defraud the government and mail fraud in violation of 18 U.S.C. §§ 286, 1341, and 1342, are indisputably subject to the MVRA. Under the MVRA, the court must: "(a) order the full amount of restitution; (b) establish an initial payment schedule that

---

[7] As the D.C. Circuit outlined in *Papagno*, "several other statutes authorize restitution for specific offenses." 639 F.3d at 1097 n.1 (citing 18 U.S.C. § 43(c) (damaging or interfering with an enterprise involving animals); 18 U.S.C. § 228(d) (child support violations); 18 U.S.C. § 1593 (peonage, slavery, and trafficking in persons); 18 U.S.C. § 2248 (sex crimes); 18 U.S.C. § 2259 (sexual exploitation of children); 18 U.S.C. § 2264 (domestic violence); 18 U.S.C. § 2327 (telemarketing fraud); 21 U.S.C. § 853(q) (amphetamine and methamphetamine offenses)).

takes into consideration the defendant's financial situation; and (c) respond to any change in the defendant's economic condition by adjusting the schedule." *United States v. Scales*, No. 14-10725, 2016 U.S. App. LEXIS 5179, at *14 (5th Cir. Mar. 17, 2016).

In computing the amount of restitution to be paid by the defendant, the MVRA requires that restitution be ordered for "each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); *see also* 18 U.S.C. § 3663A(b) (providing guidance on calculating amount of loss). The MVRA next requires the court to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," upon consideration of certain factors, such as "the financial resources and other assets of the defendant," "projected earnings and other income of the defendant," and "any financial obligations to dependents." 18 U.S.C. § 3664(f)(2). Thus, the statute requires two distinct inquiries: first, the court must ascertain and order the total amount of restitution no matter the defendant's financial situation; and, second, the court must direct the defendant to satisfy the restitution obligation in a particular manner, a direction predicated upon an evaluation of the defendant's particular financial circumstances. While the MVRA thereby cabins judicial discretion in setting the amount of restitution to be paid by a defendant, the statute authorizes broader flexibility in "fashioning" how the defendant is required to pay that restitution amount. *See Paroline v. United States*, 134 S. Ct. 1710, 1729 (2014) ("District courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders.").

Notably, the MVRA contemplates a variety of payment schedules, authorizing the court to "direct the defendant to make a single, lump-sum payment, partial payments at specified

intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). As Justice Sotomayor recently observed, "in choosing between lump-sum and partial payments, courts 'shall' consider 'the financial resources and other assets of the defendant,' along with 'any financial obligations of the defendant, including obligations to dependents.'" *Paroline*, 134 S. Ct. at 1742 (Sotomayor, J., dissenting) (quoting 18 U.S.C. §§ 3664(f)(2)(A), (C)).

When installment payments are ordered, "the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule," and the length of time for scheduled payments "shall be the shortest time in which full payment can reasonably be made." 18 U.S.C. §§ 3572(d)(1)–(2). The defendant's obligation to make restitution payments continues for up to twenty years after release from imprisonment or until his death, whichever occurs first. 18 U.S.C. §§ 3613(b), (f); *see also United States v. Pickett*, 505 F. App'x 838, 841 (11th Cir. 2013) (finding restitution judgment entered in 1997 "remains enforceable until 2019," since defendant "was released from prison in 1999"); *United States v. Dabney*, No. 3:02-CR-00068, 2009 U.S. Dist. LEXIS 94303, at *4–5 (W.D. Ky. Oct. 8, 2009) (noting that "defendant's liability to pay restitution extends until 20 years after release from imprisonment or upon the death of the defendant" and, thus, "[d]espite the fact that Defendant is no longer under supervised release, he is still obligated to make restitution payments").

Absent a payment schedule, the full amount of restitution is due immediately at the time of sentencing. 18 U.S.C. § 3664(f)(2) (directing that the manner in which restitution is to be paid is "pursuant to section 3572[(d)(1)]," which, in turn, provides that a person ordered to pay a "monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments"); *see also*

*United States v. Carter*, 742 F.3d 440, 444–45 (9th Cir. 2014) ("The practical effect of omitting restitution from the conditions of supervised release is that restitution was due immediately upon [the defendant's] sentencing, pursuant to 18 U.S.C. § 3572(d)(1).").

In addition to providing guidance on calculating the amount and manner of payment of a restitution order at the time of sentencing, the MVRA enumerates the circumstances when this order "can" be "corrected," "amended," "modified," or "adjusted."  18 U.S.C. § 3664(o);[8] *see Wyss*, 744 F.3d at 1217–19 (reversing district court's reduction in amount of restitution owed by defendant upon concluding that mandatory order of restitution under MVRA may not be altered "absent a showing of one of the § 3664(o)(1)-(2) factors").  One circumstance in which the restitution order may be adjusted post-sentencing occurs when the court is notified "of a material change in the defendant's economic circumstances."  18 U.S.C. § 3664(k); *see also* 18 U.S.C. § 3572(d)(3) (directing that any judgment for a fine permitting installment payments must also require the defendant to "notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine," which notice may trigger, upon motion of the court or any party, "adjust[ment] of the payment schedule, or require immediate payment in full, as the interests of justice require").  The original restitution order must require the defendant to give notice of any material change in economic circumstances to both the court and the Attorney General, and such notice may also be submitted by the United States or a victim.  18 U.S.C. § 3664(k).  The MVRA further requires a defendant, who enjoys improved economic circumstances post-sentencing and "during a period of incarceration," to

---

[8]    18 U.S.C. § 3664(o) provides that a restitution order "[1] can subsequently be (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title; (B) appealed and modified under section 3742; (C) amended under subsection (d)(5); or (D) adjusted under section 3664(k), 3572, or 3613A; or [2] the defendant may be resentenced under section 3565 or 3614."

apply to the restitution obligation the value of "substantial resources" received "from any source, including inheritance, settlement, or other judgment." *Id.* § 3664(n).

Generally, a fine or restitution payment becomes delinquent if payment is late more than thirty days, *id.* § 3572(h), and is in default if payment is delinquent for more than ninety days, *id.* § 3572(i). The penalties for defaulting on a criminal fine or restitution payment can be severe, including (1) "[n]otwithstanding any installment schedule," "the entire amount of the fine or restitution is due within 30 days after notification of the default," *id.*; (2) resentencing "to any sentence which might originally have been imposed," if the nonpayment is knowing, *id.* § 3614(a); (3) revocation or modification of the terms or conditions of supervised release or probation, *id.* § 3613A(a)(1); (4) adjustment of the payment schedule, *id.*; and (5) contempt, *id.* Indeed, when compliance with a schedule of restitution payments is made a special condition of supervised release, revocation of supervised release has been described as a "potent option" to enforce the restitution obligation. *Scales*, 2016 U.S. App. LEXIS 5179, at *19; *see also United States v. Wiley*, No. 14-11213, 2016 U.S. App. LEXIS 4418, at *10 (5th Cir. Mar. 7, 2016) ("[A]ny delay in paying restitution only violates [the defendant's] terms of supervised release if she fails to comply with the payment schedule prescribed by the district court.").

### 2. *Garnishment Under the MVRA and the Federal Debt Collection Procedures Act*

The MVRA grants the United States broad authority to enforce restitution orders as set out "in subchapter C of Chapter 227 [18 U.S.C. §§ 3571–74] and subchapter B of chapter 229 [18 U.S.C. §§ 3611–15] of this title" and "by all other available and reasonable means." 18 U.S.C. §§ 3664(m)(1)(A)(i)–(ii). Specifically, "[t]he United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," *id.* § 3613(a), which authority expressly applies to

"the enforcement of an order of restitution," *id.* § 3613(f). The Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001, *et seq.*, in turn, provides the "exclusive civil procedures for the United States" to enforce "a judgment on a debt."[9] 28 U.S.C. § 3001(a)(1).

The FDCPA authorizes a court, upon application by the government, to "issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." *Id.* § 3205(a). The government must then serve the writ of garnishment on the garnishee and judgment debtor. *Id.* § 3205(c)(3). The garnishee must file an answer with the court and serve a copy of that answer on the judgment debtor. *Id.* § 3205(c)(4). Written objections to the garnishee's answer and a request for a hearing asserted by either the judgment debtor or the government must be filed "[w]ithin 20 days after receipt of the answer." *Id.* § 3205(c)(5). "After the garnishee files an answer and if no hearing is requested within the required time period, the court shall promptly enter an order directing the garnishee as to the disposition of the judgment debtor's nonexempt interest in such property." *Id.* § 3205(c)(7). Garnishment is terminated, *inter alia*, by "a court order quashing the writ of garnishment." *Id.* § 3205(c)(10).

## B.    ANALYSIS

The government seeks to garnish from the defendant a significantly greater portion of his restitution obligation than is authorized by the court-ordered payment schedule imposed as part of the restitution order at the time of sentencing. The government urges that the restitution order

---

[9]    Additionally, the MVRA provides that a victim, including the federal government when named as the victim in the restitution order, *see United States v. James*, 312 F. Supp. 2d 802, 806–07 (E.D. Va. 2004), may seek to enforce a restitution order by converting that order into an abstract of judgment, which "shall be a lien on the property of the defendant . . . in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State," 18 U.S.C. § 3664(m)(1)(B).

be construed so as to avoid "a substantial limitation on the United States' ability to collect because of minimum monthly payments imposed." Gov't's Opp'n at 4.[10]  As support, the government proffers an interpretation of language used in the restitution order that is both contrary to binding precedent in this Circuit and otherwise not persuasive.

The government focuses first on the restitution order's requirement for the defendant to "pay the balance of any restitution owed at a rate of no less than $500 each month."  J & C at 6. According to the government, this language merely establishes a schedule of *minimum* monthly payments and does not obviate the defendant's liability "for the full amount of restitution" under the MVRA.  Gov't's Opp'n at 1–2.  Citing the purpose of the MVRA to "encourage[e] more aggressive collection and enforcement of restitution orders on behalf of victims," *id.* at 4, the government argues that interpreting the payment schedule as setting a cap on the amount the government may recover at any one time from the defendant "would lead to an unreasonable and illogical reading" of the MVRA, *id.*  Instead, bolstered by the oral language used at sentencing that "restitution [is] immediately payable," Tr. Sentencing Hr'g at 28:16–17, the government would treat the court-imposed payment schedule as mere guidance to the defendant, rather than any restriction on the government's authority to collect the total amount of restitution owed using any mechanism provided under the FDCPA.  Thus, critical to the defendant's motion to quash the government's writ of garnishment is the proper construction of the restitution order, which

---

[10]     In passing, the government notes that the defendant's motion to quash "appears to be untimely." Gov't's Opp'n at 1.  The government does not dispute, however, that the defendant was served by the U.S. Marshal with the Notice of Continuing Non-Wage Garnishment on April 5, 2016, *id.* n.1, and appears to have responded fairly promptly by sending a letter opposing the garnishment action two weeks later, on April 19, 2016, *see* Def.'s Mot. at 1.  Even if the defendant's letter was not technically filed within the statutorily prescribed time period, given the defendant's *pro se* status, any brief delay beyond the statutory filing period is excused.  *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824–25 (2013) (finding that Congress must "speak clearly" for a rule to be jurisdictional, and "absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character"); *Henderson v. Shinseki*, 562 U.S. 428, 433, 435 (2011) ("Filing deadlines, such as the 120-day filing deadline at issue here, are quintessential claim-processing rules," failure to comply with which may "be excused based on equitable factors, or on the opposing party's forfeiture or waiver of any objection to the late filing.").

requires that the restitution be paid both "immediately," Tr. Sentencing Hr'g at 28:16–17, and "at a rate of no less than $500 each month," J & C at 6; Tr. Sentencing Hr'g at 29:12–13.

The government's singular focus on the over-arching purpose of the MVRA "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being," *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006), leads to its interpretation that "notwithstanding the monthly payments," the restitution order is "enforceable" through this garnishment action. Gov't Opp'n at 3. Consistent with this reasoning, other federal district courts have relied upon the provisions of the MVRA providing for aggressive enforcement of restitution orders, under 18 U.S.C. §§ 3613(a) and 3664(m), to conclude that, despite a court-imposed payment schedule, the government may collect the full amount of restitution at any time. *See, e.g.*, *United States v. Otter*, No. 2:09cr25, 2011 U.S. Dist. LEXIS 52518, at *4 (W.D.N.C. May 16, 2011) (noting that restitution payment schedule "'does not mean that the Government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied. Court-imposed payment schedules are merely one means available to enforce a restitution judgment.'" (quoting *United States v. James*, 312 F. Supp. 2d 802, 807 (E.D. Va. 2004)); *United States v. Bancroft*, No. 1:09-cr-101-02, 2010 U.S. Dist. LEXIS 116576, at *2 (W.D. Mich. Nov. 1, 2010) (noting "[a]n expanding list of Federal courts have found that, under 18 U.S.C. §§ 3664(m) and 3613(a), the government is not limited by judicially crafted payment plans and may freely pursue other means of securing restitution, including a writ of garnishment"); *United States v. Picklesimer*, No. 3:00CR0008, 2010 U.S. Dist. LEXIS 71052, at *4 (W.D.N.C. June 24, 2010) ("Even the existence of a judicially prescribed payment schedule" does not preclude the Government from pursuing a continuing writ of garnishment against other proceeds); *United States v. Clayton*, 646 F. Supp.

2d 827, 835 (E.D. La. 2009) (finding that "The Enforcement Provisions of the MVRA Trump any Payment Schedule Included in the J&C" and permitting government's garnishment of assets beyond the detailed restitution payment schedule); *United States v. Miller*, 588 F. Supp. 2d 789, 801–02 (W.D. Mich. 2008) (permitting government's garnishment of defendant's pension where judgment provided for an initial payment of a lump-sum amount and subsequent monthly installment payments during the defendant's term of incarceration); *United States v. Hawkins*, 392 F. Supp. 2d 757, 759 (W.D. Va. 2005) ("holding that these court-imposed payment schedules are merely one means available to enforce a restitution judgment and do not prevent the government from pursuing other lawful enforcement methods" (internal quotations omitted)) (collecting cases).

Notwithstanding the non-binding, out-of-circuit authority cited by the government, this Court is not persuaded that any provision or purpose of the MVRA permits the government to ignore the specific terms of the restitution order, including, in particular, a payment schedule imposed after consideration of the requisite statutory factors concerning the economic circumstances of the defendant. As the Tenth Circuit has stated, "[t]he government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms." *Martinez*, 812 F.3d at 1207.

Indeed, the government points to no circuit decision holding that the general enforcement provisions of the MVRA permit the government to override a court-ordered payment schedule. Instead, the government gives cursory reliance to non-binding decisions in *United States v. Shusterman*, 331 F. App'x 994 (3d Cir. 2009) and *United States v. Ekong*, 518 F.3d 285 (5th Cir. 2007). Gov't Opp'n at 4–5. In both *Shusterman* and *Ekong*, the Third and Fifth Circuits, respectively, permitted the government to garnish assets of *incarcerated* defendants where the

restitution orders expressly stated that a payment schedule would take effect upon commencement of *supervised release.* *See Shusterman*, 331 F. App'x at 996–97; *Martinez*, 812 F.3d at 1207 (providing detail omitted from Fifth Circuit's *Ekong* decision based on review of judgment in *United States v. Ekong*, No. 3:04-CR-030-M (N.D. Tex. Sept. 10, 2004), ECF No. 74, that restitution order required payment schedule to take effect upon commencement of the term of supervised release). As the Tenth Circuit in *Martinez* concluded in its review of *Ekong*, "the [restitution] payment schedule was triggered only if the defendant had not paid the full restitution amount by the time she began supervised release." *Martinez*, 812 F.3d at 1207. Consequently, neither *Shusterman* nor *Ekong* stands for the proposition posited by the government here that the MVRA's general enforcement provisions take precedence over the court-ordered payment schedule because in both those cases, the payment schedule had yet to take effect. Moreover, due to the scarcity of reasoning in *Ekong*, the Tenth Circuit concluded that it was "impossible to tell" whether the conclusion reached in that case was because the Fifth Circuit "(1) agreed with the government that the judgment required immediate payment of the full restitution amount, requiring installments only if the defendant failed to pay the full amount by the time she began supervised release or (2) concluded that the government could garnish the full restitution amount in all cases, regardless of the language in the restitution order." *Id.* at 1208. In short, this Court agrees with the Tenth Circuit that "we do not believe *Ekong* helps us decide whether the government was entitled to garnish [the defendant's] retirement accounts in the absence of a default on his payment schedule." *Id.*

Most importantly, the government's interpretation of the payment-schedule language in the restitution order at issue here fails to grapple with a recent D.C. Circuit decision holding that where an order of restitution states that "'the balance of any restitution [is] owed at a rate of not

less than $50 each month,' . . . [t]hat statement, however, must mean that a rate of not less *or more* than $50 each month was required." *Hughes*, 813 F.3d at 1009 (emphasis in original). In reaching this conclusion, the D.C. Circuit reasoned: "[o]therwise, given the wide range between $50 and [the full restitution amount owed], the judgment would be virtually meaningless. (Of course, the court can still adjust its payment schedule if the defendant's economic circumstances change. 18 U.S.C. § 3572(d)(3).)" *Id.* Thus, the *Hughes* Court found the monthly restitution payment amount to be the maximum the government was authorized to collect from the defendant. *Id.*; *cf. United States v. Fariduddin*, 469 F.3d 1111, 1112–13 (7th Cir. 2006) (interpreting judgment that "'the defendant is to pay restitution at a rate of *not less than* $150.00 per month'" to be a "*minimum* installment . . . a floor rather than a ceiling," where defendant in plea agreement agreed that "'any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction'" and agreed "'not to request any delay or stay in payment of any and all financial obligations'" (emphasis in original)).

Here, the restitution order states plainly that the defendant "shall pay the balance of any restitution owed at a rate of no less than $500 each month"— nearly identical language to that analyzed in *Hughes*. *Compare* J & C at 6, and Tr. Sentencing Hr'g at 29:12–13 (defendant "must pay the balance of any restitution owed at a rate of no less than $500 each month"), *with Hughes*, 813 F.3d at 1009 ("'the balance of any restitution [is] owed at a rate of not less than $50 each month'"). The Court imposed this installment payment schedule after review of the PSR, which fully described the defendant's assets in his retirement savings and brokerage accounts. *See* PSR ¶¶ 64–65.[11] Indeed, as noted, *supra* n.4, the Court ordered a lower monthly payment

---

[11] The record is somewhat unclear whether the Fidelity Brokerage Account ($2,764.56) and the Fidelity Rollover Individual Retirement Account ($212,051.71) are generally mentioned in the PSR or are new accounts identified by the government post-sentencing, but the government does not suggest that these accounts represent a changed circumstance and, therefore, the Court does not treat them as such.

than the USPO recommended.  If the government wanted to recover the defendant's assets held by Fidelity Investments, "it was incumbent on the government to speak up at that time, rather than accepting the Court's ruling without objection and then attempting to circumvent it by garnishment."  *United States v. Roush*, 452 F. Supp. 2d 676, 682 (N.D. Tex. 2006).  In accordance with binding precedent from the D.C. Circuit in *Hughes*, this Court finds that the language used in the judgment and at the sentencing hearing required the defendant to pay the balance of any restitution owed at a rate of no less *or more* than $500.00 each month, and that the savings accounts disclosed in the PSR are not now belatedly subject to garnishment.

The part of the restitution order stating that restitution be "immediately payable," Tr. Sentencing Hr'g at 28:16–17, does not supersede the monthly schedule of payments imposed at the time of sentencing.  Indeed, the D.C. Circuit in *Hughes* confronted similar language, in combination with the order for installment restitution payments, and discounted this portion of the restitution order as merely "boilerplate language."  *Hughes*, 813 F.3d at 1009.[12]  Other courts

---

[12]  To the extent the government contends that "immediately payable" language in a restitution order has import, the Court agrees.  This language has the operative effect of requiring the defendant to make payments on any restitution obligation during his period of incarceration, which may be accomplished by the defendant's voluntary participation in the Bureau of Prisons ("BOP") Inmate Financial Responsibility Program ("IFRP"), as ordered here. Tr. Sentencing Hr'g at 28:16–17; *see United States v. Godoy,* 706 F.3d 493, 499 (D.C. Cir. 2013) (modifying sentence "to reflect the fact that enrollment is voluntary" in the IFRP); *see also United States v. Bedonie*, 317 F. Supp. 2d 1285, 1329–30 (D. Utah 2004) (noting that the traditional practice of declaring restitution awards due and payable in full immediately "had the advantage of allowing the Bureau of Prisons to begin immediate collection of restitution through its program and later, after a defendant's release from prison, for the probation office to do the same thing"), *rev'd and remanded on other grounds sub nom. United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005).  Absent alternative instructions regarding a schedule for restitution payment during the term of imprisonment, the "immediately payable" language may also permit the government to collect other assets belonging to the defendant outside of wages earned in prison through the IFRP.  *See United States v. James*, 312 F. Supp. 2d 802, 804–07 (E.D. Va. 2004) (permitting garnishment of defendant's retirement accounts despite defendant's participation in IFRP where restitution was "due and payable immediately" and the monthly payment schedule did not commence until sixty days after release from imprisonment).  In this case, the Court set no restitution payment schedule prior to the defendant being placed on supervised release, leaving any specific amount of payments required during incarceration uncertain or up to BOP.  The majority of circuits have held that ordering immediate payment of restitution, without specifying a payment schedule during incarceration, effectively leaves such a schedule to be developed by BOP and constitutes an impermissible delegation of authority under the MVRA, but the D.C. Circuit has declined to opine on this issue.  *See United States v. Hunter*, 786 F.3d 1006, 1012 (D.C. Cir. 2015) (recognizing that "majority of the circuits" agree that district court may not delegate "its own scheduling duties" in restitution orders that leave a prisoner's payments up to IFRP and collecting cases, but declining to rule "on the

have similarly given effect to the specific payment schedule provided in a restitution order, notwithstanding inclusion in the order of language that restitution was "payable immediately." *See, e.g.*, *Scales*, 2016 U.S. App. LEXIS 5179, at *8 ("Whatever the phrase 'payable immediately' means, its effect is limited by the requirement that the manner in which restitution is to be paid must be consistent with a defendant's ability to pay."); *United States v. Grigsby*, No. 12-10174, 2016 U.S. Dist. LEXIS 34170 (D. Kan. March 16, 2016) (order that "payment begin immediately" authorizes only the monthly payment schedule); *accord United States v. Pascucci*, No. 98 cr. 278, 2009 U.S. Dist. LEXIS 52152, at *8–9 n.4 (S.D.N.Y. June 18, 2009) (finding that when collecting restitution, the government must "bill the [defendant] in conformity with the court-approved schedule"). In short, the government's reliance on the "immediately payable" language to support the instant garnishment action, absent any default by the defendant on his payment schedule, is misplaced.

The government makes a feeble effort to distinguish *Hughes* as "factually inapposite," Gov't's Opp'n at 5, despite the fact that this binding decision addressed virtually identical language as that at issue here. In a single sentence, the government summarily rejects the binding nature of the *Hughes* decision for "turn[ing] on an error in the understanding of the

---

permissibility of such orders"); *United States v. Baldwin*, 563 F.3d 490, 491–92 (D.C. Cir. 2009) (declining to accept government's confession that the district court "committed error in failing to specify the amount and schedule of [the defendant's] restitution payments during her incarceration," and, instead, concluding that, absent preservation of any objection, "we cannot say that the district court committed 'plain error' in its restitution order" by delegating authority to BOP to determine restitution obligation payments during incarceration); *United States v. Small*, 13 F. Supp. 3d 24, 28 (D.D.C. 2014) (noting that D.C. Circuit has held only "that it is not plain error for a district court to have failed to determine the payment schedule for a defendant who participates in the IFRP" (emphasis omitted)). The delegation issue is not presented in this case nor addressed in *Hughes*. Nevertheless, the *Hughes* Court's holding that a restitution payment schedule imposed as a special condition of supervised release is "controll[ing]" as the "limit" on restitution payments raises the question whether "boilerplate" reference to restitution being "immediately payable," *Hughes*, 813 F.3d at 1009—without an express payment schedule tethered to consideration of the defendant's economic circumstances while incarcerated—is sufficient to require or confer authority on BOP to implement restitution payments during incarceration. This question need not be answered to resolve the pending motion, however.

sentence imposed by the Court and [] focus[ing] on collection under the Treasury Offset Program (TOP), not on Garnishment under the Federal Debt Collection Procedures Act (FDCPA)." Gov't's Opp'n at 5. Yet, the fact that the government's collection effort in *Hughes* was through the TOP, rather than FDCPA garnishment, is immaterial. Focusing on the mechanism used by the government to collect a restitution obligation side-steps the issue here of whether the government is authorized to accelerate payments that are not yet due under the payment schedule.

Moreover, the *Hughes* Court's focus on the district court's "understanding of the sentence," Gov't's Opp'n at 5, shows the importance of giving effect to the sentencing judge's consideration of statutory factors in providing for a restitution payment schedule. In *Hughes*, the defendant, who had played a relatively minor role in a fraud scheme, was ordered to pay $442,330 in restitution, jointly and severally with her co-defendant, but the court "expressed a clear intention that the actual restitution amount should be much smaller, perhaps as little as $0," and ultimately imposed a payment schedule "at a rate of not less than $50 each month." *Hughes*, 813 F.3d at 1008 (internal quotations omitted). Upon review of the sentencing hearing record, the *Hughes* Court determined that "the intent to limit the payment to $50 a month is especially clear," *id.* at 1009, such that the defendant "would only be delinquent if she paid less than $50 per month," *id.* at 1011, with the consequence that the government was required to return the defendant's tax returns "and to stop its purported application of TOP so long as [the defendant] is not delinquent . . . ." *Id.*

The holding in *Hughes* is dispositive here and requires that the defendant's motion to quash the government garnishment be granted. This conclusion is supported by at least two additional reasons. First, the government's position that the monthly payment schedule should

be treated as a floor on restitution payments due, rather than a ceiling, undermines the statutory mandate for the court to establish "the manner in which, and the schedule according to which, the restitution is to be paid," after consideration of the defendant's financial resources, assets, projected earnings, income, and financial obligations. 18 U.S.C. § 3664(f)(2). If the defendant is unable to pay "any amount of a restitution order" or comply with "any reasonable schedule of payments," the court may direct the defendant "to make nominal periodic payments." *Id.* § 3664(f)(3)(B). Conversely, failure to consider the defendant's economic circumstances, as required by the MVRA, in setting either a lump-sum payment or installment payment schedule has been found to be plainly erroneous. *See, e.g.*, *Paroline*, 134 S. Ct. at 1742–43 (Sotomayor, J., dissenting) ("Courts of Appeals have uniformly found it an abuse of discretion to require defendants to make immediate lump-sum payments for the full amount of a restitution award when they do not have the ability to do so." (citing *United States v. McGlothlin*, 249 F.3d 783, 784 (8th Cir. 2001) and *United States v. Myers*, 198 F.3d 160, 168–69 (5th Cir. 1999))); *see also Scales*, 2016 U.S. App. LEXIS 5179, at *5–6 (noting that failure to set a payment schedule where defendant lacked resources is reversible plain error); *Martinez*, 812 F.3d at 1206 ("[W]e have held that a court commits plain error when failing to properly consider a defendant's financial condition before issuing a restitution order."); *United States v. Grant*, 715 F.3d 552, 560 (4th Cir. 2013) (vacating restitution order upon finding that "when a court imposes payment obligations that are untethered from the defendant's ability to meet those obligations, the court exceeds its authority"); *United States v. Coates*, 178 F.3d 681, 684 (3d Cir. 1999) (finding that district court failed to comply with the MVRA where "[i]t did not specify in the restitution order the manner in which, and schedule according to which, the restitution is to be made." (internal quotations omitted)).

Construing the MVRA to permit the government to collect payment on the full restitution ordered, where the court has concluded that only installment or nominal payments are due, is plainly at odds with the statutory scheme and would render meaningless the statutory requirement that the court consider various enumerated factors relating to the defendant's financial ability to pay restitution. *See Hughes*, 813 F.3d at 1011 (Brown, J., concurring) ("'[T]he statutory scheme directs the district court, not the government, to direct how and when the defendant is to satisfy a restitution order . . . [t]he government [can]not usurp the district court's role by enforcing payments not yet due under the court-ordered payment schedule.'" (quoting *Martinez*, 812 F.3d at 1201–02, 1206)); *Grant*, 715 F.3d at 558 (observing that MVRA statutory scheme "carefully balance[s] the need for obtaining victim compensation with a requirement that restitution obligations be based on the defendant's ability to pay"); *Roush*, 452 F. Supp. 2d at 681 (granting motion to quash government's writ of garnishment, explaining that "[p]ermitting the government to execute on the full amount of restitution at any time it chooses would plainly disrupt the balance set by the court when it established the payment schedule . . . [and] will also contravene[] Congress's evident intent for the courts to oversee the timing of payment, both in initially establishing the schedule and in modifying it in response to changed circumstances").

Second, relatedly, the government contends that limiting collection efforts to the payment schedule set out in the restitution order would allow "a single provision aimed at lenity [to] [] completely swallow the greater number and proportion of provisions" in the MVRA, Gov't's Opp'n at 4,[13] but this analysis is upside down. On the contrary, authorizing the government to

---

[13] The government argues limiting enforcement of the restitution order to the payment schedule would treat the monthly payments as "each separate and enforceable judgments," a result incompatible with the MVRA because this would make two provisions, Section 3664(m), permitting collection of after-acquired assets by the defendant, and Section 3664(n), permitting collection of assets that had been hidden and later discovered, "impermissible."

ignore a court-ordered payment schedule would make meaningless and unnecessary not only the court's role in evaluating the appropriateness of a payment schedule but also other MVRA provisions guiding the content, adjustment and enforcement of restitution orders. *See, e.g.*, 18 U.S.C. §§ 3572(d)(1), 3664(f)(3)(A) (outlining payment options as an alternative to immediate payment); 18 U.S.C. §§ 3572(d)(3), 3664(k) (providing mechanisms for adjustment of a restitution order when material changes to the defendant's economic circumstances occur); 18 U.S.C. § 3572(i) (providing enforcement mechanisms for defaulting on a restitution payment schedule). If, as the government advocates, the MVRA requires immediate payment of the full restitution obligation notwithstanding imposition of a payment schedule, these provisions would be unnecessary, as the defendant would already be under an obligation to pay the entire amount. *See Martinez*, 812 F.3d at 1205. The government simply sidesteps these significant statutory construction concerns.

Accordingly, because the restitution order requires the defendant to pay his restitution obligation in monthly installments of $500.00 each month, J & C at 6, and he has fully complied with this requirement, the government may not garnish the defendant's retirement and brokerage accounts to satisfy a judgment in a manner not countenanced in the restitution order. The Court does not intend for this "decision [to] be read as discouraging the government from zealously attempting to collect restitution and make the victims of crime whole," *Roush*, 452 F. Supp. 2d at 682, but such efforts must take place within the statutory framework that Congress enacted.

---

Gov't's Opp'n at 3. The government fails to acknowledge, however, that the adjustment provision in the MVRA resolves the government's manufactured conflict. Both Section 3664(m) and Section 3664(n) would amount to "material change[s] in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," permitting a court to revisit the original sentence. 18 U.S.C. § 3664(k). Of course, in this case, the savings accounts targeted by the government's garnishment writ were disclosed in the PSR and therefore not hidden or acquired after sentencing.

### III.    CONCLUSION

For the reasons set forth above, the defendant's motion to quash is granted and the

government's writ of garnishment is quashed.  An appropriate order will be filed

contemporaneously with this Memorandum Opinion.

Date: July 11, 2016

_____

BERYL A. HOWELL
Chief Judge