# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 07-9 (BAH) |
| DAVID VILLONGCO, | Chief Judge Beryl A. Howell |
| Defendant. | |

## MEMORANDUM OPINION

Pending before the Court is the government's motion for reconsideration, Gov't's Mot. Reconsideration Mem. Opinion & Order Def.'s Mot. Quash Writ of Garnishment ("Gov't's Mot."), ECF No. 57, of the decision granting the defendant's motion to quash the government's writ of garnishment as to certain retirement and brokerage accounts belonging to the defendant, *see United States v. Villongco*, Crim. Action No. 07-9 (BAH), 2016 WL 3747508 (D.D.C. July 11, 2016). The government continues to press its entitlement to accelerate the defendant's payment of restitution by garnishing his retirement and brokerage accounts, notwithstanding a payment schedule ordered by the sentencing Court, who was apprised at the time of sentencing of the funds now targeted for garnishment. For the reasons set forth below, the government's motion is denied.

## I.  BACKGROUND

The factual background of this case is set out in this Court's prior memorandum opinion regarding the defendant's Motion to Quash the Writ of Continuing Non-Wage Garnishment ("Def.'s Mot. Quash"), ECF No. 46, which is fully incorporated here. *See Villongco*, 2016 WL 3747508, at *1–*3. In brief, the defendant was convicted in 2008 of conspiracy to defraud the government and mail fraud, in violation of 18 U.S.C. §§ 286 and 1341, for his part in a scheme

to misappropriate funds from the Export-Import Bank of the United States. *See* Judgment and Commitment Order at 1, ECF No. 33; Statement of Offense at 1, ECF No. 11. Pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), the Judgment and Commitment Order provided that the defendant owed restitution in a total amount of "$14,284,652.78, to be paid jointly and severally with [defendant's] accomplices with credit to the defendant for amount already paid," and that the defendant "shall pay the balance of any restitution owed at a rate of no less than $500.00 each month." Judgment and Commitment Order at 5–6. The defendant himself obtained only $150,000 from the scheme, which he forfeited pursuant to his plea agreement prior to sentencing. *See* Consent Order of Forfeiture, ECF No. 6.

Nearly eight years later, on March 4, 2016, the government filed an application for a writ of garnishment, seeking any property belonging to the defendant within the possession of Fidelity Investments. *See* Appl. Writ Continuing Non-Wage Garnishment, ECF No. 40. A 401(k) retirement savings account with Fidelity Investments, having a value of at least $300,000, was known to the sentencing Court at the time the Judgment and Commitment Order was entered. *See* Presentence Investigation Report, dated Feb 29, 2008, ¶¶ 64–64a, ECF No. 51. In a letter dated April 19, 2016, which was construed as a motion to quash, the defendant requested that the Court "rescind this collection effort and procedure" because "[t]here is no judg[]ment that [his] financial accounts be garnished." Def.'s Mot. Quash at 1. Prior to issuing its decision on the defendant's motion, the Court requested that the government, within two weeks, respond to the defendant's motion and "address the legal issues raised by" three circuit court cases: *United States v. Hughes*, 813 F.3d 1007 (D.C. Cir. 2016); *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015); and *United States v. Ekong*, 518 F.3d 285 (5th Cir. 2007). *See* Min. Order, dated May 9, 2016 (citing Min. Order, dated May 5, 2016). In response, the government

submitted a six-page memorandum opposing the defendant's motion, addressing the three appellate cases expressly identified by the Court in a single page. *See* Gov't's Mem. Opp'n Def.'s Mot. Quash Writ Garnishment ("Gov't's Opp'n Def.'s Mot."), ECF No. 49.

Based on the defendant's motion, the government's opposition, the record in this matter, and the relevant authorities, including analysis of the three appellate cases referenced in the Court's prior Minute Order, the defendant's motion to quash was granted. *See* Order, dated July 11, 2016, ECF No. 54. The decision to grant the defendant's motion rests primarily upon two legal conclusions. First, although the MVRA contains "general enforcement provisions" mandating that restitution be ordered in the full amount of the victim's damages and permitting the government to enforce a restitution order using a variety of means, the statute also limits the government to the "specific terms of the restitution order," including any "payment schedule imposed" by the Court, in seeking enforcement of such an order. *See Villongco*, 2016 WL 3747508, at *7–*8. Second, in this case, the government may collect only the amounts specified in the restitution order's payment schedule, notwithstanding both the Order's direction that payment shall be made "at a rate of no less than $500 each month" and the sentencing Court's oral pronouncement that restitution was "immediately payable," because that language fails to manifest an intent to require the defendant to pay the full amount of restitution immediately. *Id.* at *8–*9.

On August 8, 2016, the government timely filed a motion for reconsideration of the Court's decision, pursuant to Fed. R. Civ. P. 59(e). *See* Gov't's Mot. at 1. The defendant obtained *pro bono* counsel to represent him for purposes of the motion for reconsideration, *see* Def.'s Not. Entry Appearance & Mot. Extension Time, ECF No. 58, and filed his response on

October 28, 2016, *see* Def.'s Resp. Gov't's Mot. Recons. ("Def.'s Resp."), ECF No. 61.[1] The government's motion for reconsideration is now ripe for consideration.

## II. LEGAL STANDARD

"Unlike the Federal Rules of Civil Procedure, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules for this district provide for motions for reconsideration." *United States v. Bagcho*, No. CR 06-00334 (ESH), 2017 WL 27925, at *2 (D.D.C. Jan. 3, 2017) (citations omitted). Nevertheless, "the Supreme Court has recognized, in *dicta*, the utility of such motions," and "at least two Circuits have explicitly held . . . that motions for reconsideration may properly be considered in criminal cases." *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008) (citing *United States v. Dieter*, 429 U.S. 6 (1976); *United States v. Healy*, 376 U.S. 75, 80 (1964); *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003); *United States v. Clark*, 984 F.2d 31, 33–34 (2d Cir. 1993)). Accordingly, "judges in this district have assumed, without deciding, that they may consider motions for reconsideration in criminal cases." *Bagcho*, 2017 WL 27925, at *2 (citing *United States v. Cooper*, 947 F. Supp. 2d 108, 109 (D.D.C. 2013); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 47 (D.D.C. 2013); and *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010)).

"Judges in this district have applied the standard contained in Rule 59(e) of the Federal Rules of Civil Procedure to motions for reconsideration of final orders in criminal cases." *Hong Vo*, 978 F. Supp. 2d at 47 (distinguishing the legal standard applicable to motions for reconsideration concerning final orders from that concerning interlocutory orders) (citations omitted); *see also Ferguson,* 574 F. Supp. 2d at 113 (based on the dicta in *Dieter,* 429 U.S. at 8, "the [c]ourt . . . proceed[ed] on the assumption that it may consider . . . [a] motion for

---

[1] *Pro bono* counsel are commended for their service and the quality of their representation of the defendant in this matter.

reconsideration" and applied the FED. R. CIV. P. 59(e) standard of review). Notably, "[m]otions under FED. R. CIV. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus,* 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citation omitted). To prevail, the government "must demonstrate that (1) there has been an intervening change in controlling law; (2) there is new evidence; or (3) there is a need to correct clear error or prevent manifest injustice." *Ferguson*, 574 F. Supp. 2d at 113 (citation omitted); *see also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("A Rule 59(e) motion 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Nat'l Trust v. Dep't of State,* 834 F. Supp. 453, 455 (D.D.C. 1993), *aff'd in part and rev'd in part on other grounds sub nom. Sheridan Kalorama Historical Ass'n v. Christopher,* 49 F.3d 750 (D.C. Cir. 1995))).

"Absent a demonstrated intervening change of controlling law or new evidence, the law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments." *Smith v. Lynch*, 115 F. Supp. 3d 5, 11 (D.D.C. 2015) (citing *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, pp. 127–28 (2d ed. 1995) (footnotes omitted)))). Additionally, with regard to "clear error" under Rule 59(e), courts have imposed a "very exacting standard," *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012), *aff'd*, No. 12-5296, 2013 WL 1187396 (D.C. Cir. Mar. 14, 2013) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)). The "final judgment

5

must be dead wrong to constitute clear error." *Lardner v. FBI,* 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (internal quotation marks omitted) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir. 1988)). Similarly, "it is clear that 'manifest injustice' is an exceptionally narrow concept in the context of a Rule 59(e) motion," *Slate v. Am. Broad. Cos.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013), and, thus, "must entail more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." *Id.* at 35–36; *cf. Associated Gen. Contractors of Cal., Inc. v. Cal. State. Council of Carpenters,* 459 U.S. 519, 536 (1983) ("[T]he judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.").

### III. DISCUSSION

The government does not assert any intervening change in controlling law, nor does it present any new evidence. *See generally* Gov't's Mem. Supp. Mot. Reconsideration of Mem. Opinion & Order Def.'s Mot. Quash Writ of Garnishment ("Gov't's Mem."), ECF No. 57-1. Accordingly, the motion for reconsideration can be granted only if the government has established the "need to correct a clear error or prevent manifest injustice." *Firestone*, 76 F.3d at 1208.

In urging that reconsideration is warranted under this standard, the government has submitted a brief more than five times the length of its original opposition, raising two principal arguments regarding the scope of the government's powers under the MVRA and under the specific terms of the restitution order at issue to support its writ of garnishment.[2] Neither of the government's arguments is persuasive.

---

[2] In reply, the government takes issue with the defendant's characterization of the government's initial opportunity to address the issues raised by the defendant's motion as "full and unrestricted," Def.'s Resp. at 12. *See* Gov't's Reply Mem. Supp. Mot. Recons. at 1, ECF No. 63. In disputing this characterization, the government asserts that "the [d]efendant's meager communication requesting relief from the garnishment . . . did not discuss the

First, the government contends that "the Court's interpretation of the MVRA is unsupported and erroneous," Gov't's Mem. at 12, because "the government's enforcement remedies [are] cumulative" such that "the fact of a payment order [is] irrelevant to whether the government can also obtain process to enforce a criminal judgment," *id.* at 16. To support this contention, the government enumerates the applicable statutory authority permitting enforcement of restitution orders through installment payment orders, garnishment, and other means, and argues that the government properly followed the procedures for garnishment. *See* Gov't's Mem. at 15–19. These assertions gain the government little ground because the question presented is not whether garnishment may ever be used by the government to enforce an order of restitution, but whether such enforcement is appropriate in light of the restitution order in this case.[3] That the government *may in some circumstances* enforce an order of restitution in the manner attempted here is beside the point and, consequently, lends no support for the government's motion for reconsideration.

The government further argues that the MVRA would be undercut by interpreting a restitution order to require that the full restitution amount be satisfied exclusively by installment payments. *See* Gov't's Mem. at 22 (asserting "the proposition that the entry of any installment-based restitution order in a judgment means that the total restitution amount is not due immediately . . . must be rejected as lacking in statutory or precedential support"). In pressing

---

specific grounds relied upon in the Court's order, and the Court did not request briefing of specific issues before the United States filed its opposition." *Id.* at 1–2. The government's position is disingenuous for at least two reasons. First, the law is well-settled that the Court has an obligation to construe liberally the defendant's *pro se* letter requesting relief. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed . . . .'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). Second, while the Court's Minute Order, dated May 9, 2016, did not expressly list the legal issues raised by the referenced appellate cases, those issues were apparent from even a cursory review of the cases and, indeed, the government referenced the issues, albeit cursorily in a single page. *See* Gov't's Opp'n Def.'s Mot. Quash.

[3] The government's argument would be relevant to determining the government's ability to use garnishment as a means to collect restitution where a defendant has defaulted on a payment schedule contained in the restitution order. That set of circumstances is not presented by the instant action and, accordingly, need not be considered.

7

this argument, the government relies upon an interpretation of the MVRA, its legislative history, and supporting authorities that has already been considered and deemed unpersuasive by this Court for reasons explained in its original decision. *See Villongco*, 2016 WL 3747508, at *7–*11 (considering and rejecting the "non-binding, out-of-circuit authority cited by the government" and finding the government's "singular focus on the over-arching purpose of the MVRA 'to make victims of crime whole'" unpersuasive with respect to interpretation of the authority given the courts to fashion restitution orders). Nevertheless, the government criticizes the Court's conclusion that "the entry of any installment-based restitution order in a judgment means that the total restitution amount is not due immediately" because, in the government's view, this would mean that "Villongco could win the lottery or inherit a fortune, but the government would be unable to attach that windfall for the benefit of his victim." Gov't's Mem. at 22–23. This assertion is patently incorrect.

Pursuant to the MVRA, a restitution order must "provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," upon which notification "the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). In this way, the statute contemplates the potential injustice the government warns of and, in providing a method of preventing such injustice, reinforces the primacy of the courts' role in setting the terms of a defendant's restitution.[4] To the extent the

---

[4] Despite the statutory authority contemplating modifications of restitution orders by a court, the government in this case has never asked that the defendant's restitution order be modified to enable the defendant's assets with Fidelity Investments to be garnished, pressing only the argument that it possesses the unilateral authority to do so under the existing restitution order. *See United States v. Simpson-El,* 2016 WL 2646704, at *1–*4 (D. Kan. May 10, 2016), aff'd, 856 F.3d 1295 (10th Cir. 2017) (ordering, upon the government's motion "for an order adjusting defendant's restitution payment" in light of settlement award and after consideration of MVRA factors, that portion of settlement be paid toward the defendant's restitution obligation); *Simpson-El v. United States*, 2015 U.S. Dist.

8

government wishes to appropriate the power to set such terms, its arguments are more appropriately directed toward Congress.

The government also notes that, pursuant to 18 U.S.C. § 3613(c), upon entry of the judgment in this case, "all of Villongco's property became subject to a lien," including the Fidelity account the government attempted to garnish. Gov't's Mem. at 21 (citing 18 U.S.C. § 3613(c)). The government suggests that the mere existence of a lien justifies the writ of garnishment sought here, failing to acknowledge a critical difference between liens and writs of garnishment: namely, in contrast to the latter, the former merely secures debts without providing an independent means of satisfying them. Accordingly, that *all* a defendant's property may be subject to a lien does not mean that *all* a defendant's property may be garnished by the government.

The government further contends "there can be no lien," as plainly contemplated by the statute, if an installment payment order exclusively governs the collection of restitution because a lien "requires a fixed amount due." *Id*. at 26. This argument fares no better, since it is based on the faulty premise that an installment payment order extinguishes a defendant's obligation to pay the full amount of restitution ordered. Rather, an installment payment order controls how that obligation will be discharged, limiting not the total amount due *per se*, but the parties' rights regarding collection of that amount. In this case, since the defendant has complied thus far with his obligation under the installment payment order, no amount is *past* due such that the government could collect on its lien. Pursuant to statute and subject to court approval, however,

---

LEXIS 160789, at *6 (D. Ark. Dec. 1, 2015) (issuing declaratory judgment that the government could not presently collect entire $200,000 settlement received by criminal defendant because his restitution obligation was "not past due" given installment payment order, but noting "the sentencing court has jurisdiction to revise the restitution order"); *see also United States v. Hyde*, 497 F.3d 103, 108 (1st Cir. 2007) (noting that "the court's statutory authority to adjust a defendant's payment schedule is explicit" (citing 18 U.S.C. § 3572(d)(3)) and therefore affirming district court's decision allowing the government to garnish the sale proceeds from defendant's home notwithstanding installment payment order).

9

the government would be able to collect on its lien if the defendant defaulted on that obligation. *See* 18 U.S.C. §§ 3572(i), 3613A (providing that that "entire amount" of restitution becomes due within thirty days of notification of default, notwithstanding any "installment schedule," subject to the court's ordered action "to obtain compliance with the order of a fine or restitution," which action may include "adjust[ing] a payment schedule").

Even assuming the defendant's obligations under the restitution order were not yet certain, the government's contention that a lien requires a "fixed amount due" would still fail. While a lien does not become "choate [*i.e.*, enforceable] until such time as the underlying amount becomes certain," *Lerner v. United States*, 637 F. Supp. 679, 681 (S.D.N.Y. 1986) (discussing, *inter alia*, *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 89 (1963); *United States v. Waddill, Holland & Flinn, Inc.,* 323 U.S. 353, 359 (1945) (holding landlord's lien on future installments of rent inchoate)); *see Pioneer American Ins. Co.*, 374 U.S. at 91 (explaining in the case of a "lien to secure future indebtedness," the "creditor holds merely 'a caveat of a more perfect lien to come'" (quoting *New York v. Maclay*, 288 U.S. 290, 294 (1933))), the MVRA contains no provision specifying that the liens contemplated therein be choate at the time the restitution order is entered. Consequently, the statute's lien provisions lend no support to the government's position.

In pressing its interpretation of the MVRA, the government seeks to distinguish the authorities found persuasive in the original decision in this matter, but points only to distinctions without a difference. First, the government asserts that *Hughes* and *Martinez* are distinguishable in part because they involve "non-MVRA sentences." Gov't's Mem. at 2. With respect to *Hughes*, the government is correct that in the District Court's view, imposition of restitution in the full amount of the victims' losses was not required under the MVRA. *See* Tr. Re-Sentence

10

Hr'g at 11:5–13, *United States v. Hughes*, Crim. Action No. 09-cr-240 (RMC) (D.D.C. July 18, 2013), ECF No. 45. Not once, however, did the D.C. Circuit mention the non-mandatory nature of the restitution in determining that the installment payment order controlled over the full amount of restitution contained in the same order, indicating the distinction is irrelevant.[5] With respect to *Martinez*, the government's assertion is simply incorrect. *See United States v. Martinez*, 2014 WL 11429324, at *1 (D.N.M. Nov. 13, 2014) ("As part of [the defendant's] judgment, and pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, the Court ordered [the] [d]efendant to pay restitution in the amount of $2,710,818.66 . . . ."). The government further contends that "*Martinez* is factually inapposite because the *Martinez* judgment provided only for a payment plan, not a monetary restitution judgment," for which the obligation to pay the full amount of restitution would "begin immediately." Gov't's Mem. at 22. As explained below, however, the "due immediately" language referenced by the government provides little, if any, support for the government's position, and, thus, offers no viable distinction between *Martinez* and the case at hand.

The government's second principal argument is that the Court's factual findings regarding the sentencing Court's restitution orders are erroneous because "they fail to recognize that it provides for immediate payment of the ordered restitution." *Id.* at 21. Focusing on the terms of the sentencing Court's restitution order, the government makes three assertions in support of its position, none of which is availing.

First, the government emphasizes that "in its oral pronouncement at sentencing, [the Court] stated no less than four times that the restitution payment was due and payable

---

[5] Indeed, before the District Court in *Hughes*, the government acknowledged that once ordered, whether restitution was permissive or mandatory becomes irrelevant. *See* Tr. Re-Sentence Hr'g at 4:10–14 ("[I]f there's ordered restitution[,] whether or not the payment of restitution was mandatory or not, the [MVRA] still permits the collection of the restitution that has been ordered.").

11

immediately." *Id.* at 19. As noted in the memorandum opinion in this matter, the D.C. Circuit has described such language as "boilerplate" that cannot override the specific terms of a restitution order permitting payment of restitution in installments. *See Villongco*, 2016 WL 3747508, at *9 (quoting *Hughes*, 813 F.3d at 1009). Likewise, in giving meaning to such language, the Seventh Circuit has aptly explained that it "does not mean 'immediate payment in full,' but rather 'payment to the extent that the defendant can make in good faith, beginning immediately.'" *United States v. Sensmeier*, 361 F.3d 982, 991 (7th Cir. 2004) (quoting United States v. Burke, 125 F.3d 401, 407 (7th Cir. 1997)). Thus, "[a]ll that a 'due immediately' statement in a judgment does is command the defendant to discharge his obligations as quickly as possible." *United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008). Reflecting this understanding of the "due and payable immediately" language, the sentencing Court here expressed the view that "[t]he fact is that, you know, payment schedules end up getting worked out when people don't have the full amount of all that's due and payable immediately." Tr. Sentencing Hr'g at 32:3–5, (Feb. 29, 2008), ECF No. 52. Consequently, the government has failed to show that the Court's interpretation of this language constitutes "clear error" or "manifest injustice" warranting reconsideration of its decision.

Second, the government notes that the Judgment and Commitment Order in this case "lists the amount of restitution as $14,284,652.78, to be paid jointly and severally with accomplices," and requires payment of "the balance of any restitution owed at a rate of no less than $500.00 each month." Gov't's Mem. at 19 (quoting Judgment and Commitment Order at 5–6). The government argues that "[i]t is logical and reasonable to conclude that this 'balance of any restitution owed' language must follow a 'due and payable immediately' order" or else "the word 'balance' has no antecedent, no description of or reference to the figure from which the

balance is derived." *Id.* at 20. Yet, the government's argument ignores a fact it acknowledges in the same breath—that the defendant is jointly and severally liable for the total amount of restitution along with his accomplices in this case. *See* Judgment and Commitment Order at 6. It also ignores that the defendant forfeited $150,000 pursuant to a Consent Order of Forfeiture. *See id.* at 4. Thus, the "balance" owed by the defendant would be derived by subtracting payments made by the defendant himself, as well as any payments made by other wrongdoers. Consequently, the use of that terminology does not lend support for, let alone necessitate, interpreting the order to require the defendant to pay the full amount of restitution immediately.[6]

Third, the government points to language in the Judgment and Commitment Order providing for apportionment to the victims "if the defendant makes a partial payment" as meaning that the sentencing Court contemplated the defendant making a payment for the full amount of restitution, which the defendant would not choose to do unless required by the order. Gov't's Mem. at 20. Putting aside the obvious fact that the full restitution order was over $14,000,000 and the defendant's assets were a small fraction of that amount, the government's argument on this point is not convincing for two reasons. First, while the government's interpretation of the contingent word "if" focuses on the contingency of whether a partial or full payment is made, that word could as easily contemplate the contingency of any payment being made at all. Second, while the government suggests that a defendant on a payment schedule

---

[6] While the Supreme Court recently held that joint and several liability under the federal criminal forfeiture statute, 18 U.S.C. § 853(a)(1), "is limited to property the defendant himself actually acquired as the result of the crime," *Honeycutt v. United States*, No. 16-142, slip. op. at 11 (U.S. June 5, 2017), that holding does not disturb the D.C. Circuit's suggestion that joint and several liability nevertheless applies "to *restitution* in a criminal case" given restitution's goal of "protecting victims," *United States v. Cano-Flores*, 796 F.3d 83, 95 (D.C. Cir. 2015). Unlike § 853(a), the MVRA specifically contemplates joint and several liability, providing that a "court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). The restitution order in this matter reflects that the defendant was made jointly and severally liable for the full amount of restitution owed by him and his accomplices.

13

would never "logically" pay the full amount of restitution, speculation as to what a defendant would or would not do to make amends for the harm caused by his crime of conviction is hardly a basis upon which to interpret the restitution order to order full payment in contravention of the installment payment schedule clearly ordered therein. Any modicum of support lent by this language to the government's argument that the sentencing Court ordered immediate payment of the full amount of restitution is vanishingly small.[7]

        &ast;              &ast;              &ast;

Previously, the government opined that this case raises the "serious question" of "whether Congress' unambiguous statement that the full amount of the victim's losses should be ordered, without regard to financial ability to pay, should become subservient to the Court's discretion to order monthly installment payments." Gov't's Opp'n Def.'s Mot. Quash at 5 n.4. Yet, by affording courts the discretion to order that the full amount be paid over time and in installments, with payment schedules to be determined upon review of a defendant's financial circumstances, *see* 18 U.S.C. § 3664(f)(2), Congress avoided serious questions raised under the Constitution of ordering a criminal defendant to pay an amount of money he simply does not have. *See Williams v. Illinois*, 399 U.S. 235, 241 (1970) (holding that under the Equal Protection

---

[7] The government further challenges the defendant's "standing to press any claim based on the Court's payment order because he is not suffering any legally cognizable injury based on the government's non-enforcement of that payment order." Gov't's Mem. at 24. According to the government, "[a] misunderstanding about the scope of the executive's authority in enforcing the restitution judgment does not confer standing" upon the defendant. *Id.* at 25. The defendant counters that he "has a legally protected property interest in his retirement and brokerage accounts, and faces a concrete, particularized, and imminent injury in having the government garnish those accounts," asserting that "[w]hile third parties and victims are sometimes found to lack standing . . . a defendant undoubtedly has standing based on injuries arising out of the defendant's own sentence." Def.'s Resp. at 27–28. The defendant has the better of the argument. The government essentially recasts its merits arguments, asserting that because the defendant is wrong on the merits of his motion to quash, he lacks standing to make any argument at all. For the reasons amply set out in this Court's decisions on this matter, the defendant did not misunderstand the government's authority to enforce the restitution order—quite the contrary. Even if he had, however, and was not entitled to the relief he sought, the defendant would still have been injured by garnishment of funds in which he retains a property interest, and, consequently, would have standing to challenge the writ of garnishment. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . .").

Clause "an indigent criminal defendant may not be imprisoned in default of payment of a fine" related to an underlying offense). Notably, the government acknowledges this constitutional concern, citing *Williams* and relevant statutory authority, and recognizing the defendant's right to an installment payment order that does not create "a contempt trap by requiring the [d]efendant to pay an amount of money he does not have." Gov't's Mem. at 24 & n.5.

In light of that constitutional concern, the MVRA's requirement that full restitution be ordered is, by necessity, aspirational in nature. Under the MVRA, while the government is permitted to seek a restitution payment schedule approaching that aspirational amount, including by filing a motion to adjust the restitution order in the event of a material change in the defendant's economic circumstances, *see* 18 U.S.C. § 3664(k), the authority to order "the manner in which, and the schedule according to which, the restitution is to be paid" lies exclusively with the courts, *id.* § 3664(f)(2).[8]

Consequently, the government has fallen far short of demonstrating the need to correct a clear error or prevent manifest injustice, and its motion for reconsideration must be denied.

---

[8] Certainly the government is free to argue to a sentencing court that an installment payment schedule is unnecessary or that payments should be increased in light of the defendant's assets. As put by the defendant in this case, given the government's awareness of the defendant's property held by Fidelity Investments at the time of sentencing, "[i]f the Government wanted to recover assets from Mr. Villongco's retirement and brokerage accounts, 'it was incumbent on the government to speak up at that time, rather than accepting the Court's ruling without objection and then attempting to circumvent it by garnishment.'" Def.'s Resp. at 17 (quoting *United States v. Roush*, 452 F. Supp. 2d 676, 682 (N.D. Tex. 2006)).

## IV. CONCLUSION

For the reasons stated above, the government's Motion for Reconsideration of Court's Memorandum Opinion and Order on Defendant's Motion to Quash Writ of Garnishment, ECF No. 57, is denied. An appropriate Order accompanies this Memorandum Opinion.

Date: June 13, 2017

_____
BERYL A. HOWELL
Chief Judge